2006 OK 49

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Barry Knight BEASLEY, Respondent.**

**SCBD No. 5085.**

Supreme Court of Oklahoma.

June 27, 2006.

Loraine Dillinder Farabow, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, OK, for complainant.

Everett R. Bennett, Jr., Fraiser, Fraiser & Hickman, LLP, Tulsa, OK, for respondent.

TAYLOR, J.

¶ 1 The complainant, Oklahoma Bar Association (Bar Association), filed a complaint on July 12, 2005, and an amended complaint on September 26, 2005, against respondent, Barry Knight Beasley (Beasley), alleging multiple violations of the Oklahoma Rules of Professional Conduct (ORPC), 5 O.S.2001, ch. 1, app. 3–A, and the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2001, ch. 1, app. 1–A. Upon an evidentiary hearing, a trial panel of the Professional Responsibility Tribunal of the Oklahoma Bar Association (PRT) found that Beasley violated the ORPC and the RGDP and recommended that Beasley's license to practice law be suspended for two years and one day, that he be ordered to pay costs and that preconditions for reinstatement be imposed. Upon our *de novo* review, we conclude the appropriate discipline is suspension of Beasley's license to practice law for a period of two years and one day. We impose preconditions to reinstatement and order the payment of costs.

## I. Background

¶ 2 Barry Knight Beasley, OBA # 11220, has practiced law in the Tulsa area since he graduated from the University of Tulsa Law School, was licensed by this Court and admitted to membership in the Bar Association in 1985. In November, 2004, the Bar Association received the first of the six grievances involved in this proceeding. The grievances, in general, are that Beasley did not perform the legal services for which he was paid, failed to communicate with his clients and failed to refund unearned fees. The time period involved in the grievances spanned from December 14, 2002 to May 11, 2005. Upon receipt of each of the grievances, the Bar Association opened a formal investigation and mailed notice to Beasley. Time after time, Beasley failed to respond to the grievances or to otherwise cooperate with the Bar Association's investigations.[1]

¶ 3 On July 12, 2005, the Bar Association filed a Rule 6 complaint alleging five counts of professional misconduct in violation of the ORPC and the RGDP. The Bar Association mailed the complaint to Beasley by certified mail, return receipt requested. It was unclaimed and returned to the Bar Association. On September 26, 2005, the Bar Association filed a one-count amended complaint. It was mailed to Beasley by certified mail, return receipt requested, and Paula Beasley accepted delivery. Beasley did not file an answer.

¶ 4 In December, 2005, Everett R. Bennett, Jr., advised the Bar Association that he was authorized to accept service of process on Beasley's behalf. On December 19, 2005, copies of the complaint, amended complaint and other filings in this Rule 6 proceeding were served on Bennett.[2] After this service of process, Beasley did not file an answer to the complaint or amended complaint.

¶ 5 On January 12, 2006, the Bar Association filed a motion to deem allegations admitted pursuant to RGDP, Rule 6.4 and a motion to set a hearing. The PRT set a hearing for February 6, 2006.

¶ 6 Beasley and his attorney, Everett R. Bennett, Jr., appeared at the scheduled hearing before the PRT. Mr. Bennett expressly did not oppose the motion to deem allegations admitted and stipulated that the allegations were admitted. Beasley also expressly

---

**1.** During the investigative stage of this matter, Deborah Reheard, attorney, represented Beasley. The record contains letters from Reheard dated March 10 and 30, April 7 and 21, and May 18, 2005, indicating that Beasley is an admitted alcoholic, that he was accepting help for his alcohol abuse but that he was not providing her with necessary information to respond to the grievances. Reheard praised Beasley's legal abilities and his criminal defense skills and expressed her opinion that he is worth saving. On January 25, 2006, Reheard filed her notice of non-representation in this proceeding.

**2.** At the time, Everett R. Bennett, Jr., was representing Beasley on misdemeanor charges pending in the District Court in Tulsa County for driving while under the influence of intoxicating liquor and driving under suspension.

confessed the motion. The Bar Association's exhibits were admitted into the record without objection. Beasley submitted to questioning, and the attorneys for the complainant and the respondent made statements on the record.

¶ 7 The Bar Association recommended to the PRT that Beasley's license to practice law should be suspended for two years and one day. The PRT recommended that Beasley be suspended from the practice of law for two years and a day and ordered to pay costs of the investigative and disciplinary proceedings and that he be required to contract with Lawyers Helping Lawyers and reimburse the unearned fees to his clients as preconditions to his reinstatement. The PRT report was filed with this Court on March 9, 2006. The parties filed a joint brief and waiver of further briefs in this Court on April 28, 2006.

## II. Standard of Review of the Proceedings before the PRT

¶ 8 This Court has original and exclusive jurisdiction over bar disciplinary matters. RGDP, Rule 1.1. This Court's review of the proceedings before the PRT is *de novo. State ex rel. Okla. Bar Association v. Donnelly,* 1992 OK 164, ¶ 11, 848 P.2d 543, 545. This Court is not bound by the parties' admissions or stipulations nor the PRT's findings of facts and misconduct or recommendations of discipline. *Id.* In our *de novo* review, we examine the record and assess the weight and credibility of the evidence to determine if Beasley's professional misconduct is established by clear and convincing evidence and, if so, to determine the appropriate discipline. *Id.*

## III. The Sufficiency of the Record

¶ 9 Beasley effectively stipulated to the facts set out in the six grievances underlying the charges of professional misconduct and the fact of his total failure to cooperate with the Bar Association. He testified that he had read the complaint, amended complaint and motion to deem allegations admitted and that he confessed the allegations of fact and misconduct. Beasley's stipulation was knowing and voluntary and consistent with other

evidence in the record. Accordingly, we accept Beasley's stipulation as an evidentiary substitute for proof of the confessed facts. *State ex rel. Okla. Bar Association v. Schraeder,* 2002 OK 51, ¶ 8, 51 P.3d 570, 574–575. We find the admitted facts together with the documentary evidence, Beasley's sworn testimony and statements of counsel are sufficient for this Court's *de novo* review. *State ex rel. Okla. Bar Association v. Groshon,* 2003 OK 112, ¶ 7, 82 P.3d 99, 103.

## IV. The Admitted Facts

¶ 10 In five of the counts, the Bar Association alleged ethical violations based on the facts contained in the clients' grievances and on Beasley's failure to respond to and cooperate with the Bar Association. In one count, the Bar Association alleged only Beasley's failure to respond. Beasley admitted the facts set out in the grievances and alleged in the complaint and amended complaint.

### A. Count I: The Bartosh Grievance

¶ 11 In December, 2002, Noel Scott Bartosh paid Beasley $500.00 to assist with a mortgage application at the Creek Nation Housing Authority. Except for some attempts to contact the Cherokee Nation Housing Authority and finally the Creek Nation Housing Authority, Beasley did not perform any services for Bartosh. Beasley repeatedly failed to return phone calls or otherwise communicate with Bartosh. In June, 2004, Bartosh wrote Beasley demanding refund of the $500.00 fee. In September, 2004, Bartosh filed a grievance with the Tulsa County Bar Association.

¶ 12 In November, 2004, the Tulsa County Bar Association forwarded the Bartosh grievance to the Bar Association. In December, the Bar Association opened a formal investigation of the Bartosh grievance and mailed notice to Beasley on December 27, 2004. Beasley did not respond and the Bar Association mailed a second notice to Beasley on January 19, 2005. Again, Beasley did not respond and the Bar Association issued a subpoena, as authorized by RGDP, Rule 2.8(b), and then an alias subpoena to depose

Beasley on March 10, 2005. Beasley did not appear for the deposition.

### B. Count II: The Rokni Grievance

¶ 13 In June, 2004, Ali Rokni–Abjari (Rokni) hired Beasley to change his last name from Rokni–Abjari to Rokni. Rokni paid Beasley a $750.00 fee. Beasley repeatedly failed to return phone calls or otherwise communicate with Rokni. Beasley led Rokni to believe he had a court date for the name change but he did not. Rokni demanded a refund of the fee. Beasley did not perform any legal services for Rokni. In November, 2004, Rokni filed a grievance with the Tulsa County Bar Association.

¶ 14 In February, 2005, the Tulsa County Bar Association forwarded the Rokni grievance to the Bar Association. The Bar Association opened a formal investigation and mailed notice to Beasley on March 9, 2005. Beasley did not respond, and the Bar Association mailed a second notice to Beasley on March 16, 2005. Again, Beasley did not respond.

### C. Count III: The Cooley Grievance

¶ 15 In February, 2005, Jana Denise Cooley hired Beasley to finish her pending divorce and paid him a $750.00 retainer fee. Beasley assured Cooley he had time to work on her divorce, and, at one point, Beasley promised to make a filing by the following Friday. Beasley did not meet the promised filing date, and he repeatedly failed to return phone calls or otherwise communicate with Cooley. Cooley fired Beasley and demanded a refund of the $750.00 fee. Beasley did not refund the fee, indicating that the IRS had frozen his account.

¶ 16 In March, 2005, Cooley filed a grievance with the Bar Association. The Bar Association opened a formal investigation and mailed notice to Beasley on March 31, 2005. Beasley did not respond, and the Bar Association mailed a second notice to Beasley on April 7, 2005. Again, Beasley did not respond.

### D. Count IV: The York Grievance

¶ 17 In September, 2004, Patricia Ann York paid Beasley $160.00 to talk with her son about a criminal matter. Beasley agreed to meet with York's son at a specific time and date, but Beasley did not keep the appointment. He then scheduled two other meetings with York to refund the $160.00 fee. Beasley did not keep those appointments. Beasley repeatedly failed to return York's phone calls. In October, 2004, York filed a grievance with the Tulsa County Bar Association.

¶ 18 In March, 2005, the Tulsa County Bar Association forwarded the York grievance to the Bar Association. The Bar Association opened a formal investigation and mailed notice to Beasley on March 31, 2005. Beasley did not respond.

### E. Count V: The Shaw Grievance

¶ 19 In this count, the Bar Association did not allege that Beasley failed to provide legal services or failed to communicate with the client. The Bar Association alleged that Lisa Faye Shaw hired Beasley to represent her son on a felony drug charge in Washington County and paid him $5,000.00 in May, 2004, and that Beasley entered an appearance and appeared at various proceedings in the felony case through October, 2004. Beasley did not timely appear at the October preliminary hearing. Although Beasley called to advise he would be late, Shaw told the judge she would hire new counsel, and the judge continued the preliminary hearing until November, 2004.

¶ 20 In May, 2005, Shaw filed a grievance against Beasley with the Bar Association. The Bar Association opened a formal investigation and mailed notice to Beasley on May 26, 2005. Beasley did not respond. The alleged professional misconduct in this count is that Beasley failed to respond to the grievance and to cooperate with the Bar Association.

### F. Count VI: The Hursh Grievance

¶ 21 In May, 2005, Victor Willard Hursh hired Beasley to represent him in a divorce and child support matter. Hursh paid Beas-

ley $550.00. Beasley did not appear at a child support hearing on June 20, 2005. Beasley did not perform the legal services as agreed. Beasley failed to return Hursh's phone calls.

¶ 22 On July 29, 2005, Hursh filed a grievance against Beasley with the Bar Association. The Bar Association opened a formal investigation and mailed notice to Beasley on August 10, 2005. Beasley did not respond. On September 26, 2005, the Bar Association filed a one-count amended complaint, adding the Hursh grievance to the Rule 6 proceeding.

## V.  The Admitted Misconduct

¶ 23 The Bar Association alleged and Beasley admitted that as to Bartosh, Rokni, Cooley, York and Hursh (Counts I, II, III, IV and VI), Beasley violated the ORPC, Rules 1.1 (requiring competent representation), 1.3 (requiring diligence and promptness in representation), 1.4 (requiring reasonable communication with the client), 1.5 (requiring reasonable fees), 1.15 (requiring the safekeeping of a client's property), 1.16(a)(1) (prohibiting the accepting of representation which will result in violation of the ORPC or other law), 1.16(a)(2) (prohibiting the accepting of representation when the lawyer's physical or mental condition impairs the lawyer's ability to represent the client), 1.16(d)

**3.**  Rule 1.1 of the ORPC provides:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

**4.**  Rule 1.3 of the ORPC provides:

A lawyer shall act with reasonable diligence and promptness in representing a client.

**5.**  Rule 1.4 of the ORPC provides:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

**6.**  Rule 1.16(d) of the ORPC provides:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such

(requiring the refund of unearned fee) and 8.4(a) (providing that an attempt to violate ORPC constitutes professional misconduct) and the RGDP, Rule 1.3 (providing that acts bringing discredit to legal profession constitute grounds for discipline). Also, the Bar Association alleged and Beasley confessed that as to Rokni, Cooley and York (Counts II, III and IV), Beasley violated the ORPC, Rule 8.4(c) (prohibiting misrepresentation). And, the Bar Association alleged and Beasley confessed that Beasley's failure to respond to all six grievances and to cooperate with the Bar Association in investigating the grievances (Counts I through VI) constituted violations of the ORPC, Rule 8.1(b) (requiring a lawyer to respond to a lawful demand for information from the disciplinary authority) and the RGDP, Rule 5.2 (providing that failure to answer after service of a grievance constitutes grounds for discipline).

¶ 24 Upon our *de novo* review, we find there is clear and convincing proof that Beasley violated the ORPC, Rules 1.1 [3] by his lack of preparation, 1.3 [4] by his lack of diligence and promptness, 1.4 [5] by his failure to communicate, 1.16(d) [6] by his failure to refund unearned fees, 8.1(b) [7] by his failure to provide information to the Bar Association and 8.4(c) [8] by his misrepresenting a court

as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned....

**7.**  Rule 8.1(b) of the ORPC provides:

An applicant for admission to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not ... fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this rule does not require disclosure of information otherwise protected by Rule 1.6.

**8.**  Rule 8.4(c) of the ORPC provides:

It is professional misconduct for a lawyer to:
...
(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation....

date and the RGDP, Rules 1.3 [9] by bringing discredit upon the legal profession and 5.2 [10] by his failure to respond to the grievances. We conclude that Beasley's professional misconduct warrants discipline.

## VI. The Testimony at the PRT Hearing

¶ 25 The first time Beasley cooperated with the Bar Association in this matter was at the scheduled hearing before the PRT. Beasley appeared at the hearing, admitted he is addicted to alcohol and voluntarily and willingly submitted to questioning by counsel for the Bar Association and members of the PRT.

¶ 26 Responding to questions regarding the underlying grievances, Beasley testified that he has not refunded any of the fees paid by those clients but that he honestly intends to refund those fees and will reimburse the Client Security Fund for any claims made by his clients for unearned fees. Beasley accepted responsibility for his failure to provide the legal services to his clients, apologized and expressed remorse for that failure and for bringing discredit to the legal profession. He testified he has no excuse for his failure to respond to the grievances and to cooperate with the Bar Association even though he has had lots of personal problems.

¶ 27 Responding to questions about his law practice, Beasley testified that he worked primarily in the civil area with two law firms for some ten years. and then moved into criminal defense work as a sole practitioner. He testified that he has started to refer cases out to other lawyers in anticipation of discipline in this matter. Regarding his personal life, Beasley testified that he has encountered serious problems in the past few years including stressful criminal defense work, a pending divorce after some twenty-five years of marriage, financial problems with IRS enforcement and impairment from alcohol addiction.

¶ 28 Responding to questions about his alcohol addiction, Beasley testified that the alcohol abuse started about 1999. He has participated in several alcohol treatment programs without success. About eighteen months before the PRT hearing, Beasley sought help at Saint John's Medical facility, but he returned to drinking. Some six to eight months before the hearing, he spent a week in a detoxification program but returned to drinking, and he had a contract with Lawyers Helping Lawyers but did not follow the terms of the contract. He has a pending DUI charge in the District Court in Tulsa County. He has a plea agreement for a one-year suspended sentence, $500.00 fine and fifty-six hours of community service and a $100.00 fine for driving under suspension. Beasley testified that he has been sober for one week and is ready to work toward recovery and that he intends to seek the help of Lawyers Helping Lawyers and Alcoholics Anonymous.

¶ 29 Mr. Bennett did not question his client, but he did make a statement to the PRT on his behalf. Bennett advised that he went to law school with Beasley; he has been friends with Beasley for twenty-five years; he has been involved in litigation, from civil to first degree murder cases, with Beasley; Beasley usually puts more preparation into his representation than most other lawyers; he observed changes in Beasley over the past few years; he has observed·in the last three weeks, however, that Beasley has started to step up to his responsibilities; in his opinion, Beasley's appearance before the PRT is a big step; and a two-year-and-one-day suspension will only compound Beasley's problems.

¶ 30 The Bar Association recommended Beasley be suspended for two years and one day. In doing so, counsel for the Bar Association announced that she respects the fact that Beasley is accepting responsibility, that

---

9. Rule 1.3 of the RGDP provides:
   The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action. . . .

10. Rule 5.2 of the RGDP requires that a lawyer make a written response to a bar grievance or request for information containing "a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct. . . ."

she believes his remorse is sincere and that the public will be protected in the reinstatement process.

## VII. Mitigation

¶ 31 Beasley's testimony and counsels' statements clearly suggest that Beasley's professional misconduct stems from his spiraling personal problems, particularly his alcohol addiction. Addiction to alcohol is not in itself enough to mitigate discipline. *State ex rel. Okla. Bar Association v. Doris,* 1999 OK 94, ¶ 39, 991 P.2d 1015, 1025. In *Doris,* this Court refused to heavily consider alcohol abuse as a mitigating factor where the lawyer failed to recognize or control the problem after three convictions for driving under the influence of alcohol and four other arrests for alcohol-related offenses while in control of a motor vehicle and disbarred the lawyer. To mitigate discipline the lawyer must recognize the alcohol problem, seek and cooperate in treatment and be willing to undergo supervision to assure sobriety. *State ex rel. Okla. Bar Association v. Carpenter,* 1993 OK 86, ¶ 17, 863 P.2d 1123, 1130. In *Carpenter,* this Court considered alcohol abuse as a mitigating factor in fashioning discipline, suspended the lawyer from the practice of law for six months and required the lawyer to undergo supervision for two and one-half years.

¶ 32 Beasley testified that he has an alcohol problem and that he is willing to seek out and cooperate in treatment and be supervised by Lawyers Helping Lawyers. We shall be mindful of this testimony in fashioning the discipline. On the other hand, Beasley has a history of seeking treatment then failing to participate in the treatment programs. Additionally, the record reflects that Beasley has had at least two alcohol-related traffic offenses, in April of 2000 and in October of 2005. His driving under the influence of intoxicating liquor is of serious concern. These factors must also be considered in fashioning the discipline.

## VIII. Enhancement

¶ 33 In fashioning the degree of discipline to be imposed for misconduct, this Court considers "prior misconduct where the facts are charged in the complaint and proved and the accused has been afforded an opportunity to rebut such charges." RGDP, Rule 1.7. The Bar Association alleged in the complaint filed herein that Beasley had received a private reprimand from the Professional Responsibility Commission of the Oklahoma Bar Association (PRC) in March, 2004. The PRC found the grievance did not warrant discipline. Beasley was reprimanded for not responding to the grievance. Because Beasley has flagrantly disregarded numerous attempts by the Bar Association to communicate with him in this matter, we cannot disregard his previous failure to communicate with the Bar Association.

## IX. Discipline

¶ 34 Our responsibility in disciplinary proceedings is not to punish the offending lawyer. *Doris,* 1999 OK 94 at ¶ 37, 991 P.2d at 1025. The purposes of discipline are the protection of the public, the preservation of the integrity of the bar and the deterrence of similar misconduct. *State ex rel. Okla. Bar Association v. Benefield,* 2005 OK 75, ¶ 21, 125 P.3d 1191, 1195. We must independently determine the discipline that will achieve these goals. *Doris,* 1999 OK 94 at ¶ 38, 991 P.2d at 1025. Although we determine the appropriate discipline on a case by case basis, we must consider the discipline previously imposed for similar misconduct. *Id.*

¶ 35 We have imposed a wide range of discipline in matters where the lawyer did not earn an advance fee due to negligence in performing the work or the lack of diligence and promptness in the representation and/or the failure to account for the unearned fee or to refund it. Often, this discipline has been imposed for violations of ORPC, Rule 1.5 or Rule 1.15 for charging an excessive fee, failing to safekeep the client's property and commingling of funds. Like this matter, our previous cases involving unearned fees dealt with numerous violations. Although we find Beasley failed to refund unearned fees in violation of ORPC, Rule 1.16(d), our previous cases provide guidance.

¶ 36 In *State ex rel. Okla. Bar Association v. Bills,* 1997 OK 151, 951 P.2d 1090, respon-

dent, who failed to properly deposit a retainer fee, received a public reprimand in light of the efforts to repay the fee and correct the deficiencies in the office practice. In *State ex rel. Okla. Bar Association v. Whiteley*, 1990 OK 46, 792 P.2d 1174, respondent, who failed to properly account for a retainer fee, received a public censure and was required to refund the $1,000.00 fee with interest within six months. In *State ex rel. Okla. Bar Association v. Watson*, 1994 OK 32, 897 P.2d 246, respondent, who charged an excessive fee, received a suspension for one year and was required to refund more than $16,000.00 of the fee as a condition of reinstatement. In *State ex rel. Okla. Bar Association v. Wright*, 1997 OK 119, 957 P.2d 1174, respondent, who was negligent in performing work and was not diligent and prompt in performing the services for which he was paid in advance by some nine clients, received a suspension for two years and one day. In *State ex rel. Okla. Bar Association v. Phillips*, 1990 OK 4, 786 P.2d 1242, respondent, who failed to file a probate after receiving an advance fee and made misrepresentations to the client, was suspended for three years and required to refund the fee as a condition to reinstatement.

¶ 37 In previous disciplinary matters where alcohol or substance abuse has been a factor, we have focused on the need to safeguard the public. We recognized in *Donnelly*, 1992 OK 164 at n. 21, 848 P.2d at 547–548, n. 21, that alcoholism is an incapacitating disease which may be treated as a mitigating factor in a Rule 6 proceeding when the lawyer has recognized the problem and sought treatment before the disciplinary proceeding. *Donnelly* concluded that a public reprimand was sufficient discipline for deceiving the clients where the misconduct did not cause economic harm to the clients and the lawyer no longer used alcohol, minimizing the threat to the public.

¶ 38 The discipline imposed to safeguard the public from professional misconduct that might result from alcohol abuse runs the gamut from suspension with supervision to disbarment. In *Carpenter*, 1993 OK 86, 863 P.2d 1123, the respondent was disciplined for making non-interest-bearing loans to his clients, commingling client funds with his funds and failing to properly account for and promptly deliver funds to client. *Carpenter* took into consideration the respondent's efforts to assure sobriety and imposed a six-month suspension followed by a two-and-one-half year supervised probation.

¶ 39 In *State ex rel. Okla. Bar Association v. Adams*, 1995 OK 17, 895 P.2d 701, the Bar Association filed Rule 6 and Rule 10 disciplinary proceedings. Adams denied he had a drinking problem. This Court found that Adams' alcohol abuse rendered him personally incapable of practicing law. Considering his previous private reprimand in this Court, his failure to respond to five pending grievances and his failure to cooperate with the Bar Association, Adams was suspended from the practice of law for two years and one day.

¶ 40 In *State ex rel. Okla. Bar Association v. Briery*, 1996 OK 45, 914 P.2d 1046, the respondent was disciplined on three counts of negligent misuse and commingling of clients funds. Considering that he had received inpatient treatment for his alcohol abuse and planned to seek help from Lawyers Helping Lawyers, Briery was suspended from the practice of law for two years and one day.

¶ 41 In *Doris*, 1999 OK 94, 991 P.2d 1015, the respondent was disciplined for intentional and purposeful misappropriation of client funds, for neglect of client matters and for failure to communicate with a client. Considering the seriousness of the harm to his clients and the facts that he had appeared in court while intoxicated and had numerous alcohol-related traffic offenses, Doris was disbarred.

¶ 42 Similarly, we have imposed discipline to safeguard the public from professional misconduct that might result from drug abuse. In *State ex rel. Okla. Bar Association v. Aston*, 2003 OK 101, 81 P.3d 676, the respondent was disciplined after convictions of a drug-related felony and two misdemeanors. In *Aston*, we suspended his license for six months and imposed conditioned supervision for two years, both to commence on the day the opinion became final.

¶ 43 In *State ex rel. Okla. Bar Association v. Giger*, 2001 OK 96, 37 P.3d 856, the re-

spondent was disciplined for mishandling client funds, committing criminal acts that reflect adversely on the lawyer's fitness to practice law, bringing discredit to the profession, failing to communicate with clients and failing to respond to investigative inquiries. Giger had numerous drug-related traffic offense, but he had recognized the effect of his prescription drug addiction, had cooperated with physicians, had undergone substance abuse assessment and had agreed to participate in Lawyers Helping Lawyers. Giger was suspended from the practice of law for one year with concurrent conditioned supervision for two years. *Giger* teaches that substance abuse of any kind is incompatible with the practice of law and that the discipline can be mitigated when the lawyer recognizes the adverse affect a debilitating disease or illness has on the discharge of that lawyer's professional responsibilities and the lawyer cooperates in the treatment. *Id.* at ¶ 21, 37 P.3d at 864.

¶ 44 In the joint brief filed herein, the parties "submit that a suspension of two years and one day, with an assessment of costs, would properly serve the goals of protecting the public and our courts and deterring future misconduct by Respondent and others." We agree. Suspension for two years and one day is consistent with discipline imposed upon other lawyers committing similar misconduct. It would allow Beasley time to recover from his admitted alcohol addiction and assure his sobriety. It would require Beasley to seek reinstatement in a proceeding pursuant to the RGDP, Rules 11.1 through 11.7, which will safeguard the public.

## X. Preconditions to Reinstatement

¶ 45 The PRT considered Beasley's alcohol addiction to be an aggravating factor and a mitigating factor for disciplinary purposes. Because alcohol addiction presents this dilemma, it is appropriate to require Beasley to take necessary steps to achieve sobriety. At the PRT hearing on February 6, 2006, Beasley testified that he had been sober for a week. It is not necessary that this Court direct participation in any specific program to assure his continued sobriety. The specif-

ic treatment necessary for Beasley's rehabilitation and recovery from alcohol addiction is his responsibility if he desires to demonstrate his fitness to practice law and to have his license reinstated. *See Briery,* 1996 OK 45 at ¶ 14, 914 P.2d at 1049.

¶ 46 Beasley has admitted that he has not refunded the unearned fees to five of his clients. He caused economic harm to his clients. As a precondition to reinstatement, Beasley must refund those unearned fees.

## XI. Costs

¶ 47 The Bar Association filed an application to assess the costs of the investigative and disciplinary proceedings in the amount of $1,171.02 against Beasley. The application is supported by documents attached thereto. In his testimony before the PRT, Beasley acknowledged his responsibility for these costs. Beasley has not filed an objection to the application.

¶ 48 The Bar Association's application is granted. Beasley is ordered to pay costs in the amount of $1,171.02 within ninety (90) days after this opinion becomes final in accordance with the RGDP, Rule 6.16.

## XII. Conclusion

¶ 49 Upon our *de novo* review, we conclude there is clear and convincing proof that Beasley violated the ORPC and the RGDP. We further conclude that Beasley's professional misconduct warrants discipline and that suspension of his license to practice law for a period of two years and one day is appropriate. We also conclude it is appropriate to set forth preconditions to the reinstatement of Beasley's license to practice law. We determine as preconditions to the reinstatement of his license to practice law, in addition to the requirements in the RGDP, Rules 11.1 through 11.7, Beasley must demonstrate that 1) he has control over his alcohol disease, 2) he has refunded the unearned fees described in Counts I, II, III, IV and VI in this opinion in the total amount of $2,710.00 by paying the clients or reimbursing the Client Security Fund if restitution has been made on his behalf, and 3) he has paid the costs of these proceedings in the amount of $1,171.02.

RESPONDENT'S LICENSE SUSPEND-
ED FOR TWO YEARS AND ONE
DAY FROM THE DATE THIS OPIN-
ION BECOMES FINAL;

RESPONDENT ORDERED TO PAY
COSTS WITHIN NINETY DAYS
FROM THE DATE THIS OPINION
BECOMES FINAL.

WATT, C.J., WINCHESTER, V.C.J., and
LAVENDER, HARGRAVE, OPALA,
EDMONDSON, and COLBERT, JJ., concur.

KAUGER, J., concurs in part and dissents
in part.

I agree discipline is necessary, but this
proceeding should have been brought under
Rule 10.