2012 OK 95

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Jonna Lynn REYNOLDS, Respondent.**

**No. SCBD–5814.**

Supreme Court of Oklahoma.

Nov. 20, 2012.

Gina Hendryx, General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for complainant.

Jonna Lynn Reynolds, pro se.

WINCHESTER, J.

¶ 1 The complainant, Oklahoma Bar Association, brought a Rule 6 disciplinary proceeding against the respondent, Jonna Lynn Reynolds, for neglect of cases, failure to keep clients informed of the status of their cases, collecting and retaining fees for which no services were provided, and engaging in conduct prejudicial to the administration of justice.

¶ 2 On November 2, 2011, the Oklahoma Bar Association filed a complaint against the respondent consisting of five counts. In Count I, the Complaint alleged that Ruth Watkins hired the respondent to represent her interests in a collection matter. Watkins sought assistance in collecting money due her pursuant to her divorce decree. She paid

$3,000 for the representation. Subsequently, Watkins made repeated attempts to contact the respondent over several months, but her calls were not returned. The respondent did no legal work on this matter and did not return the file materials. Watkins submitted a grievance on March 7, 2011. The Bar Association mailed copies of the grievance on two occasions, but Reynolds did not respond.

¶ 3 In Count II, the Complaint alleged that Kathy Dean Ballard hired the respondent to represent her son in a criminal matter, and Ballard paid her $250. However, she did not communicate with Ballard again, and did not return any of the attorney fee. Ballard filed a grievance on March 30, 2011, and the Bar Association mailed copies of the grievance on two occasions, but as in the Watkins matter, Reynolds did not respond.

¶ 4 In Count III, Rodger D. Cameron paid respondent $100 to submit a complaint on his behalf, but the respondent ceased communications with Cameron, and did not respond to requests for information. After two notices from the Bar Association concerning the complaint, the Bar Association received no response from Reynolds.

¶ 5 In Count IV, Cecelia Kay McDaniels hired the respondent on or about August 7, 2009, to represent her in a dissolution of marriage, and paid her $1,000 for the representation and $187.30 for court filing fees. Although the respondent filed the matter on August 14, 2009, she did no further work on the matter, forcing McDaniels to hire substitute counsel to complete the matter. She stopped all communication with McDaniels, and did not respond to requests for the return of any unearned portion of the attorney fee. McDaniels filed a grievance on July 22, 2011. As in the other counts against Reynolds, she did not respond to the notices that the Bar Association sent.

¶ 6 In Count V, Rodger Dewayne Sutterfield hired the respondent to represent him in a criminal matter, and paid a legal fee of $1,200. She appeared in court on his behalf on four hearing dates through October 2010. But she failed to appear on three other dates in 2010 and 2011. Sutterfield hired substitute counsel to conclude the matter. As with the previous four Counts, Reynolds stopped

communicating with her client, and he submitted a grievance on August 5, 2011. When the Bar Association sent copies of the grievance, Reynolds did not respond.

¶ 7 When the Professional Responsibility Tribunal met for the hearing, the respondent appeared pro se, cross-examined the witnesses who had been called and examined by the Bar Association, and Reynolds testified on her own behalf. The respondent admitted, and the trial panel found that the she "basically abandoned all of her pending cases and clients in October 2010." She took fees without completing her cases, and failed to communicate with the Bar regarding complaints filed by her clients. The respondent

testified to having problems with depression and the investigators for the Bar Association testified to behavior of the respondent that would be consistent with depression, but the trial panel found there were no mitigating factors presented. Although Reynolds alleged depression, she was neither taking medication nor attending counseling.

¶ 8 The Trial Panel found by clear and convincing evidence that respondent had violated the Oklahoma Rules of Professional Conduct and the Rules Governing Disciplinary Proceedings. In each of five Counts against the respondent, the trial panel found violations of the Oklahoma Rules of Professional Conduct 1.3,[1] 1.4,[2] 1.5,[3] 3.2[4] and

---

1. **ORPC 1.3** provides: "A lawyer shall act with reasonable diligence and promptness in representing a client."

2. **ORPC 1.4** provides:

"a) A lawyer shall:
"(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;
"(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
"(3) keep the client reasonably informed about the status of the matter;
"(4) promptly comply with reasonable requests for information; and
"(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional conduct or other law.
"(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

3. **ORPC 1.5** provides:

(a) "A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
"(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
"(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
"(3) the fee customarily charged in the locality for similar legal services;
"(4) the amount involved and the results obtained;
"(5) the time limitations imposed by the client or by the circumstances;

"(6) the nature and length of the professional relationship with the client;
"(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
"(8) whether the fee is fixed or contingent.
"(b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.
"(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated. The agreement must clearly notify the client of any expenses for which the client will be liable whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter, and, if there is a recovery, showing the remittance to the client and the method of determination.
"(d) A lawyer shall not enter into an arrangement for, charge, or collect:
"(1) any fee in a domestic relations matter, the payment or amount of which is contingent upon the securing of a divorce or upon the amount of alimony or support, or property settlement in lieu thereof; or
"(2) a contingent fee for representing a defendant in a criminal case.

8.4(d) [5], as well as violations of the Rules Governing Professional Conduct 1.3 [6] and 5.2 [7] in each of the five Counts.

¶ 9 Regarding discipline enhancement, the panel found that Reynolds failed to acknowledge the seriousness of her professional misconduct or take any responsibility for her actions. She failed to effectively respond to the Bar's investigation and did not participate in any resolution of the grievances set forth in the Bar Association's Complaint. The respondent has been suspended since June 20, 2011, for failure to complete Mandatory Continuing Legal Education requirements. The Panel recommended to this Court the suspension of the respondent from the practice of law for two years and one day and that she pay the costs associated with this proceeding.

■ ¶ 10 Repeatedly, this Court has emphasized that the purpose of disciplinary proceedings is not to punish the attorneys involved, but to protect the public. *State ex rel. Oklahoma Bar Association v. Mothershed,* 2003 OK 34, ¶ 42, 66 P.3d 420, 428. The Bar Association's Brief in Chief, concurring with the Trial Panel's Report, recommends suspending Reynolds for a period of two years and one day, and assessing the costs of the proceedings to the respondent.

¶ 11 In *State ex rel. Oklahoma Bar Association v. Whitebook,* 2010 OK 72, 242 P.3d 517, Whitebook was suspended for two years and one day, and ordered to pay costs. This Court found that Whitebook failed to provide competent representation, failed to act with diligence in representing his clients, failed to keep his clients reasonably informed, failed to promptly comply with reasonable requests for information, and failed to charge a client a reasonable fee. *Whitebook,* 2010 OK 72, ¶ 17, 242 P.3d at 521. He also did not appear for the hearing before the Professional Responsibility Tribunal. *Whitebook,* 2010 OK 72, ¶ 11, 242 P.3d at 520. These failures violated rules 1.1, 1.3, 1.4, 1.5, and 8.1(b) of the ORPC, and Rule 5.2 of the RGDP. *Whitebook,* 2010 OK 72, ¶ 22, 242 P.3d at 522.

¶ 12 Like *Whitebook,* in *State ex rel. Oklahoma Bar Association v. Beasley,* 2006 OK 49, 142 P.3d 410, Beasley was also suspended for two years and one day, and ordered to pay costs. The Court found that Beasley violated the ORPC, rule 1.1 by his lack of preparation, rule 1.3 by his lack of diligence and promptness, rule 1.4 by his failure to

"(e) A division of a fee between lawyers who are not in the same firm may be made only if:
"(1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;
"(2) the client agrees to the arrangement and the agreement is confirmed in writing; and
"(3) the total fee is reasonable."

4. **ORPC 3.2** provides: "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client."

5. **ORPC 8.4(d)** provides: "It is professional misconduct for a lawyer to ... (d) engage in conduct that is prejudicial to the administration of justice ..."

6. **RGPC 1.3** provides: "The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline."

7. **RGPC 5.2** provides: "After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete' or insufficient to warrant the further attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance (or, in the case of an investigation instituted on the part of the General Counsel or the Commission without the filing of a signed grievance, a recital of the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action."

communicate with his clients, rule 1.16(d) by his failure to refund unearned fees, rule 8.1(b) by his failure to provide information to the Bar Association, and rule 8.4(c) by his misrepresenting a court date. He also violated the RGDP, rule 1.3 by bringing discredit upon the legal profession, and rule 5.2 by his failure to respond to the grievances. *Beasley*, 2006 OK 49, ¶ 24, 142 P.3d at 416–417. Beasley appeared before the Professional Responsibility Tribunal, and stipulated that the allegations were admitted. *Beasley*, 2006 OK 49, ¶ 6, 142 P.3d at 412.

¶ 13 On our *de novo* review, we find by clear and convincing evidence that Reynolds violated the ORPC and the RGDP. This professional misconduct warrants discipline and the suspension of her license to practice law for a period of two years and one day, beginning from the date she was suspended for the MCLE violation, June 20, 2011. The Bar Association filed an application to assess the costs of the disciplinary proceedings in the amount of $1,332.66. Reynolds has not filed an objection to this application. She is ordered to pay costs in the amount of $1,332.66 within ninety days after this opinion becomes final, pursuant to RGDP, Rule 6.16.[8]

**THE RESPONDENT IS SUSPENDED FOR TWO YEARS AND ONE DAY, AND ORDERED TO PAY COSTS.**

CONCUR: TAYLOR, C.J., WATT, WINCHESTER, EDMONDSON and COMBS, JJ.

CONCURRING IN PART; DISSENTING IN PART: REIF, J.

DISSENT: COLBERT, V.C.J., KAUGER, GURICH, JJ.

REIF, J., CONCURRING IN PART; DISSENTING IN PART, I CONCUR TO SUSPEND RESPONDENT FOR TWO YEARS, BUT DISSENT TO IMPOSING SUSPENSION BEYOND TWO YEARS.

KAUGER, J., DISSENTING, WITH WHOM GURICH, J. JOINS.

KAUGER, J., with whom GURICH, J., dissenting:

¶ 1 I dissent because I am bothered by the inconsistent impositions of discipline, and the failure of the Oklahoma Bar Association to consider the appropriateness of Rule 10 proceedings.[1]

### I. Inconsistent Discipline/Disparate Treatment.

¶ 2 The disparate treatment of lawyers who appear before us for discipline concerns me. In December of 2011, the Court issued a private reprimand for failure to respond "properly" to the OBA regarding a grievance involving a guardian ad litem. The lawyer was supported by the testimony of judges and court personnel that she was an asset to the profession. The explanation for neglect was that she seemed to "freeze or lock down" and became "somewhat paralyzed" when faced with a bar inquiry. Her conduct was much more closely aligned with the respondent here—yet the Court recommends two years and one day.

¶ 3 In *State of Oklahoma ex. rel. Bar Association v. Haave*, 2012 OK 92, 290 P.3d 747, 2012 WL 5395937, a similar "shut down" cause, the Court suspended the lawyer for two years, rather than two years and a day. However, under the facts presented here, discipline does not fall near the previous conduct in which we have previously imposed. Cases of prior public censure fall into categories such as: sexual contact or inap-

---

**8.** RGDP Rule 6.16 provides:
"The costs of investigation, the record, and disciplinary proceedings shall be advanced by the Oklahoma Bar Association (or the Professional Responsibility Commission, if provision therefor has been made in its budget). Where discipline results, the cost of the investigation, the record, and disciplinary proceedings shall be surcharged against the disciplined lawyer unless remitted in whole or in part by the Supreme Court for good cause shown. Failure of the disciplined lawyer to pay such costs within ninety (90) days after the Supreme Court's order becomes effective shall result in automatic suspension from the practice of law until further order of the Court."

**1.** Rule 10, Rules Governing Disciplinary Proceedings, 5 O.S.2011, Ch. 1, App. 1–A governs suspension and discipline for personal incapacity to practice law.

propriate sexual advances,[2] dismissals of client's cases, or failing to do anything on a client's behalf[3] or other conduct.[4]

2. *State ex rel. Oklahoma Bar Ass'n v. Corrales*, 2012 OK 64, 280 P.3d 968 [Respondent entered an Alford Plea on Count I, of misdemeanor Assault and Batter, based on allegations that he willfully and unlawfully committed an assault and battery upon his girlfriend. He was sentenced to a one year deferred sentence. He pled nolo contendre on Counts II and III, which were assault upon two different women. Respondent was sentenced to a one-year deferred sentence in each case. The sentences in all three misdemeanors were to run consecutively, resulting in a total of three years.]; *State ex rel. Oklahoma Bar Ass'n v. Murdock*, 2010 OK 32, 236 P.3d 107 [Two counts of Sexual Battery charged in violation of 21 O.S. § 1123(D). One count of Sexual Battery was dismissed and attorney entered an Alford plea on the other count, which was reduced to the misdemeanor of Outraging Public Decency, in violation of 21 O.S. § 22. He was sentenced to one year probation, 50 hours of community service, victim restitution and counseling]; *State ex rel. Oklahoma Bar Ass'n v. Wilburn*, 2006 OK 50, 142 P.3d 420 [The attorney was charged with two felony counts of sexual battery arising from his contact with female security guards at a county courthouse. Eventually, he pled guilty to misdemeanor charges, and he received a one-year suspended sentence as to each count.]; *State ex rel. Oklahoma Bar Ass'n v. Groshon*, 2003 OK 112, 82 P.3d 99 [The record established that the female client hired the attorney to handle her divorce action. Recognizing that she did not have the funds to pay him at that time for his legal services, the attorney agreed to allow her to make payments whenever she was able to do so. However, the attorney did not bill her for services. The lawyer admitted to making numerous suggestive comments to the client and engaging in inappropriate touching of a sexual nature during the course of his representation. At least one of the episodes that took place in the lawyer's office was tape recorded by the client. The client indicated she attempted to find new counsel but was unable to afford their fees.]; *State ex rel. Oklahoma Bar Ass'n v. Foster*, 2000 OK 4, 995 P.2d 1138 [Attorney entered a plea of nolo contendre to the charge of assault with the intent to commit a felony and the imposition of a five-year deferred sentence. The attorney unlawfully, wilfully, and feloniously touched A.M., a minor child under the age of eighteen (18) years, with the intent to commit the felony of procuring obscene and indecent photographs in violation of 21 O.S. Supp.1996 § 1021.2.]; *State ex rel. Oklahoma Bar Ass'n v. Garrett*, 2005 OK 91, 127 P.3d 600 [The attorney sexually battered two young women by grabbing their breasts and their buttocks while he was intoxicated. The attorney was arrested for felonious sexual battery while intoxicated and pled guilty to misdemeanor battery.]; *State ex. rel. Oklahoma Bar Ass'n v. Copeland*, 1994 OK 21, 870 P.2d 776 [Respondent purposefully touched client's breast and related that sexual favors had been performed for him by another female client.]; *State ex rel. Oklahoma Bar Ass'n v. Sopher*, 1993 OK 55, 852 P.2d 707 [While in the attorney's office, the attorney touched and looked down the client's blouse. The attorney also did the same thing to the client's mother.].

3. *State ex rel. Oklahoma Bar Ass'n v. Kelley*, 2002 OK 10, 48 P.3d 777 [The first count of the complaint involved the attorney's representation of a client in a workers' compensation case. The complaint asserted that the attorney was not diligent in her representation, the attorney did not keep the client reasonably informed about the matter and failed to expedite the litigation consistent with the client's interests. The second count against the attorney regarded the OBA's request for the attorney to respond to a grievance filed against her. After numerous requests, the attorney failed to respond, and a subpoena was issued for her deposition and production of documents.]; *State ex rel. Oklahoma Bar Ass'n v. Minter*, 1998 OK 59, 961 P.2d 208 [Respondent was hired to represent client's son in a first-degree murder case. The son was convicted and sentenced to life in prison without parole. The Respondent filed a notice of intent to appeal with the District Court in Coal County. However, he failed to also file a designation of record in the district court as required by law. Because the Respondent failed to file the proper papers to perfect the appeal, OIDS did not accept the case. The client attempted to contact the Respondent numerous times both by telephone and letter regarding the appeal. Respondent did not return any of her calls or respond to any of her letters. After a grievance was filed, the Complainant's office sent three letters to Respondent over the course of several weeks. Respondent did not respond to any of the letters.]; *State ex rel. Oklahoma Bar Ass'n v. Prather*, 1996 OK 87, 925 P.2d 28 [The attorney failed to inform his client that her case had been dismissed on two separate occasions. Also, he did not inform her that he had refiled her case. The client unsuccessfully telephoned the attorney on several occasions to request status reports and information pertaining to her case. The attorney did not return most of her phone calls and he did not inform the client of his change of address after any of his four office moves during the time he represented her.]; *State ex rel. Oklahoma Bar Ass'n v. McManus*, 1993 OK 66, 852 P.2d 727 [The parties agreed that the attorney commingled personal funds with the trust account for client's funds. The attorney failed to communicate with a client, who filed a grievance against him, and to answer the Bar's letter, requesting that he respond to the grievance. The attorney's failed to timely pursue a trial for a personal injury case. The attorney's failed to respond to the Bar's letters regarding the grievance filed by the referring attorney of the injury case.]; *State ex rel.*

*Oklahoma Bar Ass'n v. Angel*, 1993 OK 2, 848 P.2d 549 [The attorney was retained by the clients in a federal action alleging that they were fraudulently induced to accept a change in their commission arrangement. The attorney engaged in substantial discovery. A motion for summary judgment was filed by defendants in the action and gave the clients 35 days to respond. An extension was granted until. The attorney was unable to formulate a reasonable objection to the motion and requested a second extension. The attorney failed to file a response by that second extension date, and the trial court granted defendant's motion for summary judgment.]; *State ex rel. Oklahoma Bar Ass'n v. Busch*, 1992 OK 68, 832 P.2d 845 [Respondent failed to appear and a client's case was subsequently dismissed. Respondent was retained to prosecute a suit arising from an automobile collision and he filed the suit but never caused a summons to be issued. The district court dismissed the case without prejudice because no summons had been issued. The respondent failed to notify the client that his case had been dismissed. The stipulations also state that the respondent claims that he was never notified of the dismissal and returned the case-file to his client prior to the dismissal. The respondent had been previously privately reprimanded the Professional Responsibility Commission for violating the mandatory response provisions of Rule 5.2 and the Bar included this Count to enhance discipline.]; *State ex rel. Oklahoma Bar Ass'n v. Donnelly*, 1992 OK 164, 848 P.2d 543 [The attorney failed to initiate a collection action on his clients' behalf, despite his representations to the clients that he had in fact done so.]; *State ex rel. Oklahoma Bar Ass'n v. Braswell*, 1983 OK 63, 663 P.2d 1228 [The attorney failed to file a tort claim on behalf of a client within the limitations period. It was immaterial whether the attorney had assigned the matter to a law clerk or had simply misplaced the case. His procedures for monitoring unfiled cases were clearly inadequate.].

**4.** *State ex rel. Oklahoma Bar Ass'n v. Townsend*, 2012 OK 44, 277 P.3d 1269 [The attorney missed court dates resulting in rulings adverse to clients, failed to communicate, lacked diligence, and did not return files to clients in a timely manner.]; *State ex rel. Oklahoma Bar Ass'n v. Martin*, 2010 OK 66, 240 P.3d 690 [Respondent's utter failure to supervise any of a non-attorney's work activities enabling him to engage in the unauthorized practice of law by performing legal services without proper supervision by a licensed lawyer. Also, respondent was vicariously liable in disciplinary responsibility for all the misdeeds of his unlicensed employee which went unnoticed until the victim complained.]; *State ex rel. Oklahoma Bar Ass'n v. Funk*, 2005 OK 26, 114 P.3d 427 [Respondent allowed the client trust account to fall below the amount held on behalf of the client. The court found that the attorney had no intent to commingle funds but he had mismanaged the client account.]; *State ex rel. Oklahoma*

*Bar Ass'n v. Taylor*, 2003 OK 56, 71 P.3d 18 [Respondent knowing one or more of his client's medical providers were claiming interest in the settlement proceeds he received, and not knowing Texas law as to exactly what their interest was or exactly how to distribute the proceeds appropriately under the law, the attorney disbursed much of the proceeds to himself. He then embarked on a course of potentially indefinite delay with regard to the remaining proceeds, even though he knew either one or more of the providers or his client was entitled to the bulk of the funds he retained.]; *State ex rel. Oklahoma Bar Ass'n v. Erickson*, 2001 OK 66, 29 P.3d 550 [Attorney violated rule providing that it is professional misconduct to state or imply ability to improperly influence government agency or official and rule providing that it is professional misconduct to violate or attempt to violate professional conduct rules, to knowingly assist or induce another to do so, or to do so through acts of another.]; *State ex rel. Oklahoma Bar Ass'n v. Simank*, 2001 OK 13, 19 P.3d 860 [The undisputed facts were that respondent persistently failed to respond to 10 letters from the bar requesting information and also failed to sign for an additional 5 certified letter that were mailed to his official bar address.]; *State ex rel. Oklahoma Bar Ass'n v. Brewer*, 1999 OK 101, 998 P.2d 605 [Respondent failed to keep his clients reasonably informed of the status of their cases, failed to respond to their reasonable requests for information, and failed to make reasonable efforts to expedite litigation. The court also found the evidence supported a finding that respondent failed to answer complainant's request for information regarding the grievances filed against him.]; *State ex rel. Oklahoma Bar Ass'n v. Bills*, 1997 OK 151, 951 P.2d 1090 [The attorney was representing a wife in a divorce proceeding and accepted a retainer against which he could charge his fees as they were earned. The client discharged the attorney and requested the return of the unused portion of the retainer and an accounting. The attorney had not kept an account of the hours he had spent on the file and had to recreate it from memory.]; *State ex rel. Oklahoma Bar Ass'n v. Blackburn*, 1991 OK 35, 812 P.2d 379 [Two counts were filed against respond: 1) Because of his substance-abuse problems, the attorney neglected to file a brief on behalf of his client in a criminal appeal; 2) A wife contacted Blackburn by telephone and recruited him to handle her divorce. In this conversation, she revealed a number of factors about her finances, requests for alimony and child support, and custody considerations. Later Blackburn wrote to wife stating that he had been contacted by her husband and was filing suit for divorce on the husband's behalf. Blackburn had evidently been a family friend of the husband for a number of years.]; *State ex rel. Oklahoma Bar Ass'n v. Borders*, 1989 OK 101, 777 P.2d 929 [Attorney failed to communicate with criminal defendant's mother and with public defender's office and failed to preserve property of client

¶ 4 The attorney's conduct is much less severe than any of the prior cases.[5] Since 2009, we have issued 5 private reprimands involving: failure to respond to grievances, failure to account for client funds and communicate with clients, selling marital property and concealing it, pleading nolo contendere with pointing a firearm, entering a plea to child abuse by injury. The disciplinary pattern is inexplicable.

## II. Rule 10 proceedings.

¶ 5 According to the Bar Association, the respondent admitted she suffered from depression and sought medical help for it. Nevertheless, the Bar Association discounted this admission because the respondent did not prove she was under a doctor's care or had any medical appointments scheduled. Although the respondent's situation was not as remarkable, she exhibited behavior similar to the lawyer in *State of Oklahoma ex. rel. Bar Association v. Haave*, 2012 OK 92, 290 P.3d 747.

and to act diligently to represent client's interests.]; *State ex rel. Oklahoma Bar Ass'n v. McNaughton*, 1986 OK 25, 719 P.2d 1279 [The attorney, who had accepted representation of an adult defendant charged with the felony offense of lewd molestation of a minor, also served as counsel in prosecution related matters, for the alleged underage victim of the crime, her minor sister, and their adult mother. The attorney argued that he had made a full disclosure to the mother.].

5. I have not included an exhaustive list of all of our prior public censure cases, however nearly thirty cases have been provided spanning 30 years as a significant sampling of prior conduct.