2012 OK 92

**STATE of Oklahoma, ex rel., OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Christian Rollow HAAVE, Respondent.**

**OBAD No. 1884, SCBD No. 5805.**

Supreme Court of Oklahoma.

Nov. 6, 2012.

---

Gina Hendryx, General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant,

No appearance by Respondent.

REIF, J.:

¶ 1 On September 30, 2011, the Oklahoma Bar Association, acting through the Chairman of the Professional Responsibility Commission and the General Counsel, filed a complaint with the Office of the Chief Justice against Respondent attorney Christian Rollow Haave. The complaint sought discipline of Respondent for alleged professional misconduct, pursuant to Rule 6, Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. 2001, Ch. 1, App. 1–A. The complaint alleged that Respondent failed to complete legal services on behalf of three clients who hired and paid Respondent to perform such services.

The complaint also related that the Complainant met with Respondent to discuss the client grievances and agreed to allow Respondent additional time to file written responses to the grievances. The complaint reports that Respondent did not file a written response within the agreed time nor at any other time, and that Respondent did not respond to written and telephonic attempts to contact her. The complaint asserted that Respondent violated Rules 1.3 and 5.2, RGDP, 5 O.S.2011, Ch. 1, App. 1–A, and Rules 1.3, 1.4, 1.5, 3.2 and 8.4(b), Rules of Professional Conduct (RPC), 5 O.S.2011, Ch. 1, App. 3–A. The complaint asked this Court to impose discipline for such misconduct as the Court may find equitable and proper.

¶ 2 On November 11, 2011, a panel of the Professional Responsibility Tribunal (PRT) held a hearing concerning the allegations in the complaint. Respondent did not appear before the PRT. The General Counsel advised the PRT that attempted service of the complaint upon Respondent by certified mail and process server had been unsuccessful, but that the complaint and notice of the hearing before the PRT were sent by regular mail to Respondent's official bar association roster address and such mailings had not been returned. The General Counsel further advised the PRT that Respondent had not filed a response to either the complaint or the client grievances. In response to both a written motion and oral request by the General Counsel, the PRT ruled that the allegations set forth in the complaint were deemed admitted as provided in Rule 6.4 RGDP.

¶ 3 The allegations of misconduct that were deemed admitted pertained to three instances of client abandonment. The first instance of abandonment was set forth in Count I of the complaint. This count related that Respondent failed to inform client Sheila Kay Ferguson that Respondent had obtained a continuance of the hearing for Ferguson's appointment as guardian of her handicapped adult daughter. Unaware of the continuance, Ferguson appeared alone and the court granted her a temporary guardianship to take care of the daughter's emergency medical needs. Respondent has never informed Ferguson of a reason for obtaining the con-

tinuance or for discontinuing her representation of Ferguson. Respondent did not return the unearned portion of the $1000 fee and Ferguson completed the guardianship through the services of another attorney at additional expense.

¶ 4 The second instance of client abandonment was set forth in Count II of the complaint. This count related that Respondent failed to complete a divorce for client Shanna Roberts after a settlement of the issues in the divorce was reached between the parties. Respondent obtained Roberts' signature to a divorce decree, but did not transmit the decree to opposing counsel. Respondent never gave Roberts a reason for failing to provide the decree to opposing counsel or for discontinuing her representation of Roberts. Respondent did not return the unearned portion of the $2500 fee and Roberts completed the divorce through the services of another attorney at additional expense.

¶ 5 The third instance of client abandonment was set forth in Count III of the complaint. This count related that Respondent failed to do any work for client Devin Seay Love after accepting a $400 fee to represent him in a child custody matter. Respondent did not communicate further with him and did not return the fee.

¶ 6 In addition to the deemed admitted allegations, the PRT admitted 48 exhibits offered by the General Counsel and heard testimony from the investigator who attempted to work with Respondent to resolve the client grievances. The investigator related that her communication with Respondent was limited to one face-to-face meeting and a few emails, despite repeated efforts to contact Respondent by phone, mail and home visits. The investigator told the PRT that Respondent never denied or contested the allegations in the client grievances, and explained her failure to fulfill her commitments to her clients was due to her illness and the illness and misfortunes of her parents. The investigator reported that Respondent did not provide medical records or any other documentation to support this explanation. In spite of the Respondent's failure to respond or appear, the General Counsel did urge the PRT to consider the fact that Re-

spondent had not been disciplined before as a mitigating factor.

¶ 7 Following the hearing, the PRT issued its report, finding that the allegations in the complaint had been proven by clear and convincing evidence. The PRT concluded that Respondent's actions and omissions in the representation of the three complaining clients violated Rules 1.3, 1.4, 1.5, 3.2, and 8.4(d), RPC, and Rules 1.3 and 5.2, RGDP, and such violations constituted professional misconduct. The PRT recommended suspension for two years and a day.

¶ 8 In reaching this recommendation, the PRT took the following mitigating circumstances into account: (1) the absence of prior discipline, complaints or grievances, (2) the fact that Respondent took responsibility for her conduct, (3) her claim of illness that caused her fatigue, exhaustion and depression, (4) the investigator's description of Respondent's demeanor as "down" and "look[ing] like she was going through some things," and (5) the legal work that Respondent failed to perform was completed by other counsel and/or courts with no resulting irreparable harm. To determine the proper weight to be given such mitigating factors, the PRT considered discipline imposed in prior cases with similar facts and circumstances. Noting that both disbarment and suspension had been imposed in prior similar cases, the PRT felt that disbarment would be too severe discipline in the absence of irreparable harm to the clients.

¶ 9 On the other hand the PRT did not believe the mitigating factors were sufficient to deviate from discipline of suspension. The PRT explained that Respondent is not currently fit to practice law in light of the conduct and circumstances disclosed in the record and is likely to repeat her improper behaviors without intervention. The PRT specially noted that Respondent failed to respond to the complaint, did not appear at trial and did not seek to be heard on any issue. The PRT concluded such actions demonstrate that Respondent is not sufficiently concerned or interested in maintaining or defending her status as a member of the Oklahoma Bar Association.

¶ 10 In its brief to this Court, the Oklahoma Bar Association argues that suspension of two years and a day is the appropriate discipline for Respondent's professional misconduct. In support of such discipline, the General Counsel cites *State ex rel. Oklahoma Bar Association v. Whitebook,* 2010 OK 72, 242 P.3d 517, and *State ex rel. Oklahoma Bar Association v. Phillips,* 1990 OK 4, 786 P.2d 1242. The General Counsel points out that this Court imposed suspension of two years and a day in these cases for similar instances of professional misconduct under comparable facts and circumstances.

¶ 11 In disciplinary proceedings, this Court acts as a licensing court in exercise of our exclusive jurisdiction. *State of Oklahoma ex rel. Oklahoma Bar Association v. Wilburn,* 2006 OK 50, ¶ 3, 142 P.3d 420, 422. We have a constitutional, nondelegable responsibility to decide whether misconduct has occurred and what discipline is appropriate. *Id.* We exercise this responsibility, not for the purpose of punishing an attorney, but to assess his or her continued fitness to practice law, and to safeguard the interests of the public, the courts and the legal profession. *Id.* Our review of the record is de novo in which we conduct a nondeferential, full-scale examination of all relevant facts. *Id.*

¶ 12 In discharging our responsibility to conduct a full-scale examination of all relevant facts bearing on the discipline of a member of the bar of this State, we must first determine if the lawyer accused of misconduct was afforded due process and whether the record is sufficient for de novo review. *Whitebook,* 2010 OK 72, ¶¶ 21–22, 242 P.3d at 522. In the case at hand, both of these requirements are satisfied.

¶ 13 The record filed with this Court reflects that the complaint and all relevant notices were sent by regular mail to the official roster address provided by Respondent and these items were not returned by the postal service. The record contains the complaint that sets forth the factual circumstances upon which Respondent's alleged misconduct is based and the specific Rules of Professional Conduct that Respondent is accused of violating. The Complainant Bar Association made every reasonable effort to secure a response from Respondent, including a face-to-face meeting with Respondent, and offered to resolve the client grievances outside the disciplinary process through a diversion program. Respondent did not avail herself of the diversion program, did not provide a written response to the complaint, did not otherwise deny or contest the allegations in the complaint or client grievances, did not appear before the PRT, and did not enter an appearance or file a brief to assist this Court in its de novo review of the proceedings before the PRT. In view of such defaults by Respondent, and the presentment of a record that is fully compliant with the procedural and substantive requirements for proceedings of this nature, we may proceed to independently determine whether Respondent is guilty of professional misconduct and the appropriate discipline in such case.

¶ 14 Upon de novo review, we find clear and convincing evidence that Respondent violated Rules 1.3, 1.4, and 1.5, RPC, in her representation of clients Ferguson, Roberts, and Love, and Rule 5.2, RGDP, in the course of this disciplinary proceeding. More particularly, we find that Respondent (1) violated Rule 1.3 RPC by failing to act with reasonable diligence in her representation of these clients, (2) violated Rule 1.4 RPC by failing to communicate that she was not going to complete the services she had been hired and paid to perform, (3) violated Rule 1.5 RPC by charging each client an unreasonable fee by retaining unearned amounts for services she promised but did not perform and (4) violated Rule 5.2 RGDP by failing to file a written response to the General Counsel's notice that clients Ferguson, Roberts, and Love had filed grievances. As for the recommendations by the PRT and General Counsel that we also discipline Respondent for alleged violations of Rule 8.4 RPC and 1.3 RGDP, we again note as we did in *Whitebook* that these rules are authorities which allow a lawyer to be disciplined and are not provisions mandating conduct. Having said that we hasten to add that these provisions do support the imposition of discipline in this case because Respondent's conduct was prejudicial to the administration of

justice as provided in Rule 8.4(d) RPC, and brought discredit upon the legal profession as provided in Rule 1.3 RGDP. Based on the record presented, we conclude that the appropriate discipline for such misconduct is the suspension of Respondent's license to practice law for two years.

¶ 15 We enter a suspension of two years in this case "not for the purpose of punishing [this] attorney, but ... to safeguard the interests of the public, the courts and the legal profession." *Wilburn,* 2006 OK 50, ¶ 3, 142 P.3d at 422 (citations omitted). In the *Whitebook* case, we stressed that a person who holds a bar license must promptly and adequately respond to allegations of misconduct when requested to do so. *Whitebook,* 2010 OK 72, ¶ 23, 242 P.3d at 522. Attorneys who fail to respond to client grievances, who fail to answer formal charges of misconduct, and who fail to appear and participate in disciplinary proceedings, not only show blatant disregard for this Court's authority, but reveal how little they value their license to practice law. *Id.* at ¶ 26, 242 P.3d at 523 Lawyers who fail to discharge these minimal burdens to protect their own interests cannot be expected or trusted to act to protect the interests of clients, the public and the legal profession. Although suspension for two years and a day as well as disbarment have been imposed for misconduct of the nature disclosed in this case, this Court has reserved the "severest sanction" of removal with proof of fitness for reinstatement for cases where irreparable harm to a client has resulted. *See State ex rel. Oklahoma Bar Association v. McCoy,* 1996 OK 27, 912 P.2d 856.

1. Rule 10, Rules Governing Disciplinary Proceedings, 5 O.S.2011, Ch. 1, App. 1–A governs suspension and discipline for personal incapacity to practice law.

2. Less discipline has been recommended, and imposed in a multitude of previous disciplinary proceedings. Cases of prior public censure fall into categories such as; sexual contact or inappropriate sexual advances, dismissals of client's cases, or failing to do anything on a client's behalf or other conduct. *State ex rel. Oklahoma Bar Ass'n v. Corrales,* 2012 OK 64, 280 P.3d 968 [Respondent entered an Alford Plea on Count I, of misdemeanor Assault and Batter, based on allegations that he willfully and unlawfully com-

¶ 16 As a final matter, we find that Complainant Bar Association incurred costs in the amount of $516.19 for the investigation of the client grievances, the record, and the disciplinary proceeding, all as set forth in Complainant's Application to Assess Costs. Respondent did not file a response to this application. In cases where discipline results, this Court will require the disciplined lawyer to pay the costs within ninety days of the disciplinary opinion becoming final in the absence of good cause to remit all or some portion of same. Rule 6.16 RGDP. No good cause has been shown to relieve Respondent from the burden of paying the costs allowed by Rule 6.16. We further make payment of the costs a condition for reinstatement. *Whitebook,* 2010 OK 72, ¶ 26, 242 P.3d at 523.

## RESPONDENT SUSPENDED FROM THE PRACTICE OF LAW FOR TWO YEARS; COSTS IMPOSED.

¶ 17 TAYLOR, C.J., COLBERT, V.C.J., WATT, WINCHESTER, EDMONDSON, REIF, and COMBS, JJ., concur.

¶ 18 KAUGER and GURICH, JJ., concur specially.

KAUGER, J., with whom GURICH, J., joins concurring specially:

¶ 1 I concur specially because I am concerned that even though the Oklahoma Bar Association had notice that the respondent might have had debilitating depression and/or other illnesses, Rule 10 proceedings were not considered.[1] I am also troubled by the inconsistency in the Bar's recommendation for discipline in similar and dissimilar circumstances.[2]

mitted an assault and battery upon his girlfriend. He was sentenced to a one year deferred sentence. He pled nolo contendre on Counts II and III, which were assaults upon two different women. Respondent was sentenced to a one-year deferred sentence in each case. The sentences in all three misdemeanors were to run consecutively, resulting in a total of three years.]; *State ex rel. Oklahoma Bar Ass'n v. Murdock,* 2010 OK 32, 236 P.3d 107 [Two counts of Sexual Battery charged in violation of 21 O.S. § 1123(D). One count of Sexual Battery was dismissed and attorney entered an Alford plea on the other count, which was reduced to the misdemeanor of Outraging Public Decency, in violation of 21 O.S. § 22. He was sentenced to one

year probation, 50 hours of community service, victim restitution and counseling]; *State ex rel. Oklahoma Bar Ass'n v. Wilburn,* 2006 OK 50, 142 P.3d 420 [The attorney was charged with two felony counts of sexual battery arising from his contact with female security guards at a county courthouse. Eventually, he pled guilty to misdemeanor charges, and he received a one-year suspended sentence as to each count.]; *State ex rel. Oklahoma Bar Ass'n v. Groshon,* 2003 OK 112, 82 P.3d 99 [The record established that the female client hired the attorney to handle her divorce action. Recognizing that she did not have the funds to pay him at that time for his legal services, the attorney agreed to allow her to make payments whenever she was able to do so. However, the attorney did not bill her for services. The lawyer admitted to making numerous suggestive comments to the client and engaging in inappropriate touching of a sexual nature during the course of his representation. At least one of the episodes that took place in the lawyer's office was tape recorded by the client. The client indicated she attempted to find new counsel but was unable to afford their fees.]; *State ex rel. Oklahoma Bar Ass'n v. Foster,* 2000 OK 4, 995 P.2d 1138 [Attorney entered a plea of nolo contendre to the charge of assault with the intent to commit a felony and the imposition of a five-year deferred sentence. The attorney unlawfully, wilfully, and feloniously touched A.M., a minor child under the age of eighteen (18) years, with the intent to commit the felony of procuring obscene and indecent photographs in violation of 21 O.S. Supp.1996 § 1021.2.]; *State ex rel. Oklahoma Bar Ass'n v. Garrett,* 2005 OK 91, 127 P.3d 600 [The attorney sexually battered two young women by grabbing their breasts and their buttocks while he was intoxicated. The attorney was arrested for felonious sexual battery while intoxicated and pled guilty to misdemeanor battery.]; *State ex. rel. Oklahoma Bar Ass'n v. Copeland,* 1994 OK 21, 870 P.2d 776 [Respondent purposefully touched client's breast and related that sexual favors had been performed for him by another female client.]; *State ex rel. Oklahoma Bar Ass'n v. Sopher,* 1993 OK 55, 852 P.2d 707 [While in the attorney's office, the attorney touched and looked down the client's blouse. The attorney also did the same thing to the client's mother.] *Oklahoma Bar Ass'n v. Kelley,* 2002 OK 10, 48 P.3d 777 [The first count of the complaint involved the attorney's representation of a client in a workers' compensation case. The complaint asserted that the attorney was not diligent in her representation, the attorney did not keep the client reasonably informed about the matter and failed to expedite the litigation consistent with the client's interests. The second count against the attorney regarded the OBA's request for the attorney to respond to a grievance filed against her. After numerous requests, the attorney failed to respond, and a subpoena was issued for her deposition and production of documents.]; *State ex rel. Oklahoma Bar Ass'n v. Minter,* 1998 OK 59, 961 P.2d 208 [Respondent was hired to represent client's son in a first-degree murder case. The son was convicted and sentenced to life in prison without parole. The Respondent filed a notice of intent to appeal with the District Court in Coal County. However, he failed to also file a designation of record in the district court as required by law. Because the Respondent failed to file the proper papers to perfect the appeal, OIDS did not accept the case. The client attempted to contact the Respondent numerous times both by telephone and letter regarding the appeal. Respondent did not return any of her calls or respond to any of her letters. After a grievance was filed, the Complainant's office sent three letters to Respondent over the course of several weeks. Respondent did not respond to any of the letters.]; *State ex rel. Oklahoma Bar Ass'n v. Prather,* 1996 OK 87, 925 P.2d 28 [The attorney failed to inform his client that her case had been dismissed on two separate occasions. Also, he did not inform her that he had refiled her case. The client unsuccessfully telephoned the attorney on several occasions to request status reports and information pertaining to her case. The attorney did not return most of her phone calls and he did not inform the client of his change of address after any of his four office moves during the time he represented her.]; *State ex rel. Oklahoma Bar Ass'n v. McManus,* 1993 OK 66, 852 P.2d 727 [The parties agreed that the attorney commingled personal funds with the trust account for client's funds. The attorney failed to communicate with a client, who filed a grievance against him, and to answer the Bar's letter, requesting that he respond to the grievance. The attorney failed to timely pursue a trial for a personal injury case. The attorney failed to respond to the Bar's letters regarding the grievance filed by the referring attorney of the injury case.]; *State ex rel. Oklahoma Bar Ass'n v. Angel,* 1993 OK 2, 848 P.2d 549 [The attorney was retained by the clients in a federal action alleging that they were fraudulently induced to accept a change in their commission arrangement. The attorney engaged in substantial discovery. A motion for summary judgment was filed by defendants in the action and gave the clients 35 days to respond. An extension was granted. The attorney was unable to formulate a reasonable objection to the motion and requested a second extension. The attorney failed to file a response by that second extension date, and the trial court granted defendant's motion for summary judgment.]; *State ex rel. Oklahoma Bar Ass'n v. Busch,* 1992 OK 68, 832 P.2d 845 [Respondent failed to appear and a client's case was subsequently dismissed. Respondent was retained to prosecute a suit arising from an automobile collision and he filed the suit but never caused a summons to be issued. The district court dismissed the case without prejudice because no summons had been issued. The respondent failed to notify the client that his case had been dismissed. The stipulations also state that the respondent claims that he was never notified of the dismissal and returned the casefile to his client prior to the dismissal. The respondent had been previously privately reprimanded the Professional Responsibility Commis-

## I. Rule 10 Proceedings.

¶ 2 Rule 10, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch.1, App. 1–A, concerns suspension of a lawyer from the practice of law due to personal incapacity. Personal incapacity includes mental or **physical illness**, active misfeasance, or **repeated neglect** or habitual use of alcohol, drugs, or other mentally or physically disabling substances.[3] The record in this cause, coupled

sion for violating the mandatory response provisions of Rule 5.2 and the Bar included this Count to enhance discipline.]; *State ex rel. Oklahoma Bar Ass'n v. Donnelly*, 1992 OK 164, 848 P.2d 543 [The attorney failed to initiate a collection action on his clients' behalf, despite his representations to the clients that he had in fact done so.]; *State ex rel. Oklahoma Bar Ass'n v. Braswell*, 1983 OK 63, 663 P.2d 1228 [The attorney failed to file a tort claim on behalf of a client within the limitations period. It was immaterial whether the attorney had assigned the matter to a law clerk or had simply misplaced the case. His procedures for monitoring unfiled cases were clearly inadequate.] *State ex rel. Oklahoma Bar Ass'n v. Townsend*, 2012 OK 44, 277 P.3d 1269 [The attorney missed court dates resulting in rulings adverse to clients, failed to communicate, lacked diligence, and did not return files to clients in a timely manner.]; *State ex rel. Oklahoma Bar Ass'n v. Martin*, 2010 OK 66, 240 P.3d 690 [Respondent's utter failure to supervise any of a non-attorney's work activities enabling him to engage in the unauthorized practice of law by performing legal services without proper supervision by a licensed lawyer. Also, respondent was vicariously liable in disciplinary responsibility for all the misdeeds of his unlicensed employee which went unnoticed until the victim complained.]; *State ex rel. Oklahoma Bar Ass'n v. Funk*, 2005 OK 26, 114 P.3d 427 [Respondent allowed the client trust account to fall below the amount held on behalf of the client. The court found that the attorney had no intent to commingle funds but he had mismanaged the client account.]; *State ex rel. Oklahoma Bar Ass'n v. Taylor*, 2003 OK 56, 71 P.3d 18 [Respondent knowing one or more of his client's medical providers was claiming interest in the settlement proceeds he received, and not knowing Texas law as to exactly what their interest was or exactly how to distribute the proceeds appropriately under the law, disbursed much of the proceeds to himself. He then embarked on a course of potentially indefinite delay with regard to the remaining proceeds, even though he knew either one or more of the providers or his client was entitled to the bulk of the funds he retained.]; *State ex rel. Oklahoma Bar Ass'n v. Erickson*, 2001 OK 66, 29 P.3d 550 [Attorney violated rule providing that it is professional misconduct to state or imply ability to improperly influence government agency or official and rule providing that it is professional misconduct to violate or attempt to violate professional conduct rules, to knowingly assist or induce another to do so, or to do so through acts of another.]; *State ex rel. Oklahoma Bar Ass'n v. Simank*, 2001 OK 13, 19 P.3d 860 [The undisputed facts were that respondent persistently failed to respond to 10 letters from the bar requesting information and also failed to sign for an additional 5 certified letter that were mailed to his official bar address.]; *State ex rel. Oklahoma Bar Ass'n v. Brewer*, 1999 OK 101, 998 P.2d 605 [Respondent failed to keep his clients reasonably informed of the status of their cases, failed to respond to their reasonable requests for information, and failed to make reason was efforts to expedite litigation. The court also found the evidence supported a finding that respondent failed to answer complainant's request for information regarding the grievances filed against him.]; *State ex rel. Oklahoma Bar Ass'n v. Bills*, 1997 OK 151, 951 P.2d 1090 [The attorney was representing a wife in a divorce proceeding and accepted a retainer against which he could charge his fees as they were earned. The client discharged the attorney and requested the return of the unused portion of the retainer and an accounting. The attorney had not kept an account of the hours he had spent on the file and had to recreate it from memory.]; *State ex rel. Oklahoma Bar Ass'n v. Blackburn*, 1991 OK 35, 812 P.2d 379 [Two counts were filed against respondent. 1) Because of his substance-abuse problems, the attorney neglected to file a brief on behalf of his client in a criminal appeal. 2) A wife contacted Blackburn by telephone and recruited him to handle her divorce. In this conversation, she revealed a number of factors about her finances, requests for alimony and child support, and custody considerations. Later Blackburn wrote to wife stating that he had been contacted by her husband and was filing suit for divorce on the husband's behalf. Blackburn had evidently been a family friend of the husband for a number of years.]; *State ex rel. Oklahoma Bar Ass'n v. Borders*, 1989 OK 101, 777 P.2d 929 [Attorney failed to communicate with criminal defendant's mother and with public defender's office and failed to preserve property of client and to act diligently to represent client's interests.]; *State ex rel. Oklahoma Bar Ass'n v. McNaughton*, 1986 OK 25, 719 P.2d 1279 [The attorney, who had accepted representation of an adult defendant charged with the felony offense of lewd molestation of a minor, also served as counsel in prosecution related matters, for the alleged underage victim of the crime, her minor sister, and their adult mother. The attorney argued that he had made a full disclosure to the mother.].

3. Rule 10 *et seq.*, Rules Governing Disciplinary Proceedings, 5 O.S.2011 Ch. 1, App. 1–A governs suspension for personal incapacity to practice law. Rule 10.1, Rules Governing Disciplinary Proceedings, 5 O.S.2011 Ch. 1, App. 1–A defines "personally incapable of practicing law" as:

with the Bar Association's hesitancy to pursue Rule 10 suspensions,[4] indicates confusion as to when, why, and how a Rule 10 proceeding is to be used and what treatment an attorney is afforded under the Rule.

### a. When an attorney's actions arise out of a personal incapacity to practice law, the cause should be pursued under Rule 10.

¶ 3 In disciplinary matters, the Bar Association exercises a prosecutorial power[5] subject to this Court's de novo review.[6] Once the Bar Association recognizes or is on notice of an attorney's possible incapacity, it should proceed under the disciplinary guidelines of Rule 10.[7] Regardless of whether the Bar Association becomes aware of a potential incapacity through investigation of complaints or is notified from another source, it is the Bar Association's responsibility to determine, in the first instance: whether suspension should proceed under Rule 10; whether the attorney poses an immediate threat to the

> (a) Suffering from mental or physical illness of such character as to render the person afflicted incapable of managing himself, his affairs or the affairs of others with the integrity and competence requisite for the proper practice of law;
> (b) Active misfeasance or repeated neglect of duty in respect to the affairs of a client, whether in matters pending before a tribunal or in other matters constituting the practice of law;
> (c) Habitual use of alcoholic beverages or liquids of any alcoholic content, hallucinogens, sedatives, drugs, or other mentally or physically disabling substances of any character whatsoever to any extent which impairs or tends to impair ability to conduct efficiently and properly the affairs undertaken for a client in the practice of law.

4. There are several bar cases in which the Bar Association had notice that the attorney may have been incapable of practicing law and consequently should have proceeded under Rule 10 *et seq.*, Rules Governing Disciplinary Proceedings, 5 O.S.2001 Ch.1, App. 1–A. See, e.g., *State ex. rel. Oklahoma Bar Ass'n v. Whitworth*, 2008 OK 22, 183 P.3d 984; *State ex rel. Oklahoma Bar Ass'n v. Burns*, 2006 OK 75, 145 P.3d 1088; *State ex rel. Oklahoma Bar Ass'n v. Beasley*, 2006 OK 49, 142 P.3d 410; *State ex rel. Oklahoma Bar Ass'n v. Rogers*, 2006 OK 54, 142 P.3d 428; *State ex rel. Oklahoma Bar Ass'n v. Chapman*, 2005 OK 16, 114 P.3d 414; *State ex rel. Oklahoma Bar Ass'n v. Hummel*, 2004 OK 30, 89 P.3d 1105; *State ex rel. Oklahoma Bar Ass'n v. Thompson*, 1993 OK 144,

public; and whether the practitioner committed acts of misconduct for which discipline should be sought jointly under Rule 10 proceedings.[8]

### b. A Rule 10 proceeding is used to safeguard the interest of the public, of the courts, and of the legal profession. Suspension under Rule 10 prevents a lawyer from representing clients while acting under an incapacity and from providing substandard service due to the incapacity.

¶ 4 The responsibility of this Court in disciplinary proceedings is not to punish but rather to inquire into and to gauge a lawyer's continued fitness to practice law, with a purpose of safeguarding the interest of the public, of the courts, and of the legal profession.[9] The nondelegable, constitutional responsibility to regulate the practice and the ethics, licensure, and discipline of legal practitioners

864 P.2d 339; *State ex rel. Oklahoma Bar Ass'n v. Garvin*, 1989 OK 97, 777 P.2d 926; *State ex rel. Oklahoma Bar Ass'n v. McCurtain*, 1989 OK 4, 767 P.2d 427.

5. *State ex rel. Oklahoma Bar Ass'n v. Caldwell*, 1994 OK 57, ¶ 4, 880 P.2d 349; *Tweedy v. Oklahoma Bar Ass'n*, 1981 OK 12, ¶ 10, 624 P.2d 1049.

6. *State ex rel. Oklahoma Bar Ass'n v. Mayes*, 2003 OK 23, ¶ 17, 66 P.3d 398; *State ex rel. Oklahoma Bar Ass'n v. Israel*, 2001 OK 42, ¶ 13, 25 P.3d 909; *State ex rel. Bar Ass'n v. Bolusky*, 2001 OK 26, ¶ 14, 23 P.3d 268.

7. Rule 10.1, Rules Governing Disciplinary Proceedings, 5 O.S.2011 Ch.1, App. 1–A, see note 3, supra.

8. Rule 6 *et seq*, Rules Governing Disciplinary Proceedings, 5 O.S.2011 Ch.1, App. 1–A, governs formal disciplinary proceedings for misconduct before the Supreme Court and responsibility tribunal. Rule 10 *et seq.*, Rules Rules Governing Disciplinary Proceedings, 5 O.S.2011 Ch.1, App. 1–A, governs suspension for personal incapacity to practice law.

9. *State ex rel. Oklahoma Bar Ass'n v. Bolton*, 1995 OK 98, ¶ 15, 904 P.2d 597; *State ex rel. Oklahoma Bar Ass'n v. Donnelly*, see note 2, supra at ¶ 14; *State ex rel. Oklahoma Bar Ass'n v. Colston*, 1989 OK 74, ¶ 20, 777 P.2d 920; *State*

is solely vested in this Court.[10] In a Rule 10 proceeding, the primary objective is to minimize the potential risk to the public of harm from a practitioner's incapacity. The focus is not exclusively on the past. Rather, the focus is on the practitioner's present condition and its future consequences.[11] A practitioner's incapacity is important in crafting solutions which accord with the law's imperative of ensuring protection of the public from substandard lawyers.[12]

¶5 The respondent's incapacity and her threat of irreparable public harm became obvious, but the Bar Association did not seek an immediate interim suspension of the attorney's license to practice law.[13] The first sign of trouble, was when the respondent appeared on the July 7, 2010, list of attorneys to be suspended from the practice of law for the nonpayment of dues. The reason attorneys appear on this list—**neglect**. Neglect in paying their dues. Apparently, at the last possible opportunity, she paid her dues and was not stricken from membership. The fact that she was on this list and then off the list was not brought to the attention of the Court or the trial panel. The Bar Association stated in these proceedings that she had never had any prior discipline or suspension.[14] I do not mean to imply that Rule 10 should be considered for failure to pay timely bar dues.

¶6 However, all of the allegations of misconduct stemmed from neglect, non responsiveness, ignoring clients and the Bar Association. The record contains emails from the Bar investigator who attempted to discuss the grievances with the respondent from August of 2010, to December of 2010. This attempt was met with non responsiveness and neglect from her. By January of 2011, the investigator still had not been able to obtain a response, although she did learn that the respondent was dealing with her father's illness. Finally, in June of 2011, the respondent informed the investigator that: her health had deteriorated; she had been in the hospital for radiation treatment and chest pains; her father had been in ICU; her mother had had two surgeries; her parents' house had caught fire and they were displaced; the entire experience was "disorienting" to her; and she was unable to respond to the grievances—regardless of the outcome.

¶7 Finally, in September of 2011, more than one year after contact with the respondent was attempted, the Bar Association informed her that they were filing charges, but they had delayed the matter in hopes that she would voluntarily cooperate. They informed her that they had no other option but to file charges and that if there was some physical, mental or emotional reason she was unable to handle the situation, she should let them know and they could assist her. At the trial panel hearing on November 17, 2011, the investigator informed the trial panel that at one personal meeting with the respondent, she mentioned that she has Hashimoto's disease, and that she was suffering from exhaustion, tiredness, depression, and fatigue. The investigator also stated that she seemed distracted, and looked unhealthy, down, and disheveled. What more could she have done to "let them know" she had physical, mental or emotional reasons for being unable to handle the situation?

¶8 At this juncture the attorney should have had two options —— either admit to her incapacity, agree to get help, and agree to an interim suspension or object to the recommended suspension, request a hearing, and have an accelerated determination made

*ex rel. Oklahoma Bar Ass'n v. Moss*, 1983 OK 104, ¶12, 682 P.2d 205.

**10.** *State ex rel. Oklahoma Bar Ass'n v. Holden*, 1995 OK 25, ¶1, 895 P.2d 707; *State ex rel. Oklahoma Bar Ass'n v. Farrant*, 1994 OK 13, ¶8, 867 P.2d 1279; *Tweedy v. Oklahoma Bar Ass'n*, see note 5, supra at ¶4.

**11.** *State ex rel. Oklahoma Bar Ass'n v. Adams*, 1995 OK 17, ¶13, 895 P.2d 701.

**12.** *State ex rel. Oklahoma Bar Ass'n v. Carpenter*, 1993 OK 86, ¶11, 863 P.2d 1123.

**13.** Rule 6.2A, Rules Governing Disciplinary Proceedings, 5 O.S.2011 Ch. 1, App. 1–A, allows the Bar Association to seek interim suspension when a lawyer is personally incapable of practicing law as defined by Rule 10.1, Rules Governing Disciplinary Proceedings, 5 O.S.2011 Ch.1, App. 1–A, see note 1, supra.

**14.** The Complaint filed by the Bar Association on September 30, 2011, states that the respondent "was so licensed at all times relevant to this Complaint" and makes no mention of her neglect to pay dues or her near prior suspension.

as to whether the incapacity existed, a threat of substantial and irreparable public harm was posed, and an immediate interim suspension was warranted.[15]

¶ 9 When an immediate interim suspension is not sought, yet it appears that a practitioner may be acting under a personal incapacity, a Rule 10 proceeding should be brought. A determination can then be made concerning whether the lawyer is personally incapable of practicing law and should be suspended until the incapacity is removed.[16] If the allegations of incapacity are based upon conduct or neglect of clients, discipline may be jointly sought.[17]

¶ 10 At this juncture, the question becomes whether the lawyer should be disciplined or whether the lawyer should be found personally incapable of practicing law and suspended until reinstated by this Court.[18] This does not mean that a disability shields a practitioner from professional responsibility. Where the facts so warrant, discipline could be imposed even when the attorney is also found to be personally incapable of practicing

law.[19] However, the disability may serve as a mitigating factor when searching for suitable discipline.[20] For instance, alcohol abuse or alcoholism may serve as a mitigating factor where the offending attorney recognizes the problem and seeks and cooperates in treatment.[21]

¶ 11 Here, the attorney did not have an opportunity to agree to an interim suspension even though she essentially admitted that she was incapable of practicing law. She should have been suspended until further order of the Court. Once the Court issues an interim suspension, the next questions in the proceedings become: 1) whether the attorney can make an adequate showing that the incapacity is removed—i.e., that the attorney now has the personal capacity to resume the practice of law; and 2) what amount of discipline, if any, is due for the attorney's misconduct toward clients. Instead, this attorney has remained licensed for two years since this proceeding began. Neither the interest of the Bar Association, the attorney, nor the public has been served.[22] Maybe the better practice is for the Bar

15. Rule 6.2A (2), Rules Governing Disciplinary Proceedings, 5 O.S.2011 Ch. 1, App. 1–A, provides in pertinent part:

(a) Upon filing of the verified complaint, the Court may issue any order directing the respondent to object and show cause within (10) days why such order of interim suspension should not be entered.
(b) In the event such an objection is timely filed, the matter shall be set for hearing at the earliest possible time. Such hearing may be before the Court, any Justice thereof, or the Court may refer the matter to the Professional Responsibility Tribunal for hearing and recommendation.

16. Rule 10 et seq. Rules Governing Disciplinary Proceedings, 5 O.S.2011 Ch. 1, App. 1–A.

17. Rule 10.5, Rules Governing Disciplinary Proceedings, 5 O.S.2011 Ch. 1, App. 1–A, provides:

Whenever a proceeding charging that a lawyer is personally incapable of practicing law is based upon conduct or neglect of duty in respect to the affairs of any client, the complaint must also allege specifically any such conduct which would justify the imposition of discipline, so that the Professional Responsibility Tribunal may hear evidence thereon, and in its report shall make findings and a recommendation as to whether the lawyer should be disciplined or whether he should be found personally incapable of practicing.

Rule 10.10, Rules Governing Disciplinary Proceedings, 5 O.S.2011 Ch. 1, App. 1–A, provides: The report of the Trial Panel of the Professional Responsibility Tribunal shall be made to the Chief Justice for proceedings in the Supreme Court as in disciplinary actions. If the Court finds the respondent personally incapable of practicing law, he shall be formally suspended from the practice of law until the further order of the Court.

18. Rule 10.5, Rules Governing Disciplinary Proceedings, 5 O.S.2011 Ch. 1, App. 1–A, see note 16, supra.

19. State ex rel. Oklahoma Bar Ass'n v. Prather, 1996 OK 87, ¶ 17, 925 P.2d 28; State ex rel. Oklahoma Bar Ass'n v. Adams, 1995 OK 17, ¶ 13, 895 P.2d 701; State ex rel. Oklahoma Bar Ass'n v. Donnelly, see note 2, supra at ¶ 15; Oklahoma Bar Ass'n v. Fore, 1977 OK 41, ¶ 9, 562 P.2d 511.

20. State ex rel. Oklahoma Bar Ass'n v. Caldwell, see note 5, supra at ¶ 7, fn. 12.

21. State ex rel. Oklahoma Bar Ass'n v. Doris, 1999 OK 94, ¶ 39, 991 P.2d 1015; State ex rel. Oklahoma Bar Ass'n v. Carpenter, see note 12, supra at ¶ 17; State ex rel. Oklahoma Bar Ass'n v. Donnelly, see note 2, supra at ¶ 16.

22. Rule 10.11, Rules Governing Disciplinary Proceedings, 5 O.S.2011 Ch. 1, App. 1–A, directs that the procedures, insofar as they are applica-

Association to discuss Rule 10 with every attorney in which a grievance is filed, and allow those who qualify for a Rule 10 suspension to pursue it. That might be a better practice than to leave the lawyer and the public dangling like participles in suspension for years at a time.

---

ble, for resuming the practice of law after the removal of a personal incapacity are the same as the procedures as those provided in Rule 11, following suspension upon disciplinary grounds. Rule 11 *et seq.,* Rules Governing Disciplinary Proceedings, 5 O.S.2011 Ch. 1, App. 1–A, governs the reinstatement process. It makes no difference whether the suspension resulted from an interim suspension for personal incapacity or from a suspension pursuant to a Rule 10 proceeding where no interim suspension was sought. Rule 10.11, Rules Governing Disciplinary Proceedings, 5 O.S.2011 Ch. 1, App. 1–A, provides in pertinent part:

(a) Procedures for reinstatement of a lawyer suspended because of personal incapacity to practice law shall be, insofar as applicable, the same as the procedures for reinstatement provided in Rule 11 following the suspension following disciplinary grounds....

Rule 6.2A, Rules Governing Disciplinary Proceedings, 5 O.S.2011 Ch. 1, App. 1–A. In requesting reinstatement, the lawyer must establish by clear and convincing evidence that: 1) the condition is no longer a threat rendering the applicant personally incapable of practicing law; and 2) the applicant's conduct will conform to the high standards required of a member of the Oklahoma Bar. Rule 10.5, Rules Governing Disciplinary Proceedings, 5 O.S.2011 Ch. 1, App. 1–A. Further, the applicant must present stronger proof of qualifications than one seeking admission for the first time. Rule 11.4 Rules Governing Disciplinary Proceedings, 5 O.S.2011 Ch. 1, App. 1–A, provides:

An application for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. An applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time. The proof presented must be sufficient to overcome the Supreme Court's former judgment adverse to the applicant. Feelings of sympathy toward the applicant must be disregarded. If applicable, restitution, or the lack thereof, by the applicant to an injured party will be taken into consideration by the Trial Panel on an application for reinstatement. Further, if applicable, the Trial Panel shall satisfy itself that the applicant complied with Rule 9.1 of these Rules.