2016 OK 72

**STATE of Oklahoma, EX REL. OKLA-HOMA BAR ASSOCIATION, Complainant,**

v.

**Glenn Martin MIRANDO, Respondent.**

SCBD No. 6329

Supreme Court of Oklahoma.

FILED JUNE 21, 2016

Stephen L. Sullins, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant,

Glenn Martin Mirando, Tulsa, Oklahoma, Pro Se.

## OPINION

WATT, Justice:

¶1 On October 21, 2015, Complainant Oklahoma Bar Association (the Bar) filed its complaint against Respondent Glenn Martin Mirando, pursuant to Rule 6, Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. 2011, ch. 1, app. 1-A, alleging specific acts of professional misconduct, in violation of the Oklahoma Rules of Professional Conduct, 5 O.S. 2011, ch. 1, app. 3-A. The complaint contains eight counts of allegations of attorney misconduct based on grievances filed with the Bar by former clients of Mirando. Each count of the complaint contains an allegation that Mirando wholly failed to respond to the particular grievance as required by Rule 5.2, RGDP.[1] The complaint was later deemed amended to add two additional counts of misconduct against Mirando which arose after the filing of the complaint and the evidentiary hearing held before the Professional Responsibility Tribunal (PRT). The Bar recommends suspension of Mirando's license for two years and one day and the assessment of costs in the amount of $2,825.99.

¶2 On December 10, 2015, the PRT held a hearing on the Bar's allegations against Mirando. Mirando did appear at the hearing. Each of the eight former clients named in the complaint testified, either in person or by telephone. The PRT filed its Trial Panel Report on January 11, 2016, with this Court. It recommended suspending Mirando from the practice of law for one year and assessing the costs of this proceeding against him. The recommendation also included requiring him to attend training in law office management.

## JURISDICTION AND STANDARD OF REVIEW

¶3 This Court has exclusive original jurisdiction over Bar disciplinary matters. *State ex rel. OBA v. Parker*, 2015 OK 65, 359 P.3d 184, citing *State ex rel. OBA v. Funk*, 2005 OK 26, ¶3, 114 P.3d 427, 430. We exercise our constitutional, nondelegable power to regulate the practice of law and the ethics, licensure, and discipline of its practitioners. *State ex rel. OBA v. Passmore*, 2011 OK 90, ¶15, 264 P.3d 1238, 1243. The Bar must prove its allegations of lawyer misconduct by clear and convincing evidence. See RGDP Rule 6.12c;[2] *Passmore*, supra, at 1243,. This Court decides whether misconduct has occurred, and, if so, the appropriate discipline to be imposed. *State ex rel. OBA v. Zimmerman*, 2012 OK 35, ¶15, 276 P.3d 1022, 1027, citing *Passmore*, supra. In this Court's *de novo* standard of review, we are not bound by the PRT's findings of fact, its view of the evidence, the credibility of witnesses, or its recommendation for discipline. *Passmore*, supra, at 1243,. The primary purpose of lawyer disciplinary proceedings is the protection of the public and purification of the Bar, rather than the punishment of the offending lawyer. *State ex rel. OBA v. Bellamy*, 2012 OK 20, ¶8, 273 P.3d 56, 61–62.

---

1. Rule 5.2, RGDP, provides:

   After making such preliminary investigation as the General Counsel may deem appropriate, the General Counsel shall either (1) notify the person filing the grievance and the lawyer that the allegations of the grievance are inadequate, incomplete' or insufficient to warrant the further attention of the Commission, provided that such action shall be reported to the Commission at its next meeting, or (2) file and serve a copy of the grievance (or, in the case of an investigation instituted on the part of the General Counsel or the Commission without the filing of a signed grievance, a recital of the relevant facts or allegations) upon the lawyer, who shall thereafter make a written response which contains a full and fair disclosure of all the facts and circumstances pertaining to the respondent lawyer's alleged misconduct unless the respondent's refusal to do so is predicated upon expressed constitutional grounds. Deliberate misrepresentation in such response shall itself be grounds for discipline. The failure of a lawyer to answer within twenty (20) days after service of the grievance (or recital of facts or allegations), or such further time as may be granted by the General Counsel, shall be grounds for discipline. The General Counsel shall make such further investigation of the grievance and response as the General Counsel may deem appropriate before taking any action.

2. Rule 6.12c, RGDP, provides:

   c. To warrant a finding against the respondent in a contested case, the charge or charges must be established by clear and convincing evidence, and at least two of the members of the Trial Panel must concur in the findings.

¶ 4 Mirando testified he served as director of Lawyers Helping Lawyers for nine years. He is a recovering alcoholic, but he has been sober for approximately 19 years. There have not been allegations that he has resumed drinking.

## ENHANCEMENT

■ ¶ 5 The complaint filed in this case alleges that this Court previously disciplined Mirando on November 28, 2011, in SCBD No. 5736, by a private reprimand. The discipline was imposed because of the neglect of his clients, in violation of Rules 1.3, 1.15, 8.1(b), and 8.4(a) ORPC, and for his failure to respond in a timely manner to the Bar, in violation of Rule 5.2 RGDP. This Court may consider prior discipline for the purpose of enhancement of discipline in a later case. See *State ex rel. OBA v. Knight*, 2015 OK 59, 359 P.3d 1122. The Bar must allege in the complaint the former discipline imposed if it

seeks enhancement in the current case. See Rule 6.2, RGDP, 5 O.S. 2011 Ch. 1, App. 1-A.[3] The Bar gave notice in the current complaint that enhancement of discipline was being recommended against Mirando.

## THE COMPLAINT

¶ 6 In each count, the Bar advised Mirando in writing of the particular allegations of each grievance and requested a response within a specific time. In each case, Mirando failed to respond. The alleged misconduct in each grievance, although varying in specific detail, has an underlying theme of Mirando's failure to communicate with his clients. Each grievance contains an allegation that the fees paid were unearned, but were never returned to the client, as well as an allegation that Mirando failed to respond to the Bar's repeated inquiries. Each count contains an allegation that Mirando violated Rules 1.1,[4] 1.3,[5] 1.4,[6] 1.5,[7] and 8.4(a),[8] ORPC. As previously

3. Rule 6.2, RGDP:

The complaint shall set forth the specific facts constituting the alleged misconduct, and if prior conduct resulting in discipline, or evidence from prior investigations, is relied upon to enhance discipline, the prior acts or conduct relied upon shall be set forth.

4. **Rule 1.1. Competence.**

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.

5. **Rule 1.3. Diligence**

A lawyer shall act with reasonable diligence and promptness in representing a client.

6. **Rule 1.4. Communication**

(a) A lawyer shall:
(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 1.0(e), is required by these Rules;
(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
(3) keep the client reasonably informed about the status of the matter;
(4) promptly comply with reasonable requests for information; and
(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance

not permitted by the Rules of Professional conduct or other law.
(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

7. **Rule 1.5. Fees**

(a) A lawyer shall not make an agreement for, charge or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;
(6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) whether the fee is fixed or contingent.
(b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will

noted, each count also contains an allegation that Mirando violated Rule 5.2, RGDP, supra.

## THE GRIEVANCES AND EVIDENCE

### ¶ 7 Count I: The Yurchenko Grievance

In December, 2010, Anna Yurchenko hired Mirando to represent her in an immigration matter. She complained that despite attempting to reach him after receiving letters about her immigration status, Mirando did not return her calls. She alleged she paid him more than $7,000.00 to represent her, but he did little on her case. She filed a grievance with the Bar on December 22, 2014. Mirando failed to respond to two letters from the Bar concerning the grievance, and the matter was opened for formal investigation.

Although there was evidence that Mirando represented her well in several criminal and immigration matters, requiring travel between Tulsa and Oklahoma City, there was also evidence that she was arrested and threatened with deportation for missing a court appearance about which she was unaware.

### ¶ 8 Count II: The Whitman Grievance

In March, 2014, Lisa Whitman hired Mirando to represent her in her divorce case and paid him a fee of $2,500.00. She alleged that Mirando stopped contacting her, although she made numerous attempts to contact him. He missed a court date and failed to communicate with her, and she terminated him. On February 12, 2015, Whitman filed a grievance with the Bar against Mirando.

Mirando claims he earned his fee in the divorce case by properly filing the case, attending court appearances and working on discovery and research. A "miscommunication" was given as the reason for missing a court date. Although he claims he returned her file to her new attorney, Whitman disputes this. He failed to respond to any correspondence from the Bar concerning this grievance.

### ¶ 9 Count III: The Moody Grievance

In October, 2014, Christopher Moody hired Mirando to represent him in a criminal matter for which he paid a fee of $1000.00. Moody alleged Mirando failed to file an Entry of Appearance, did little work on the case, and failed to communicate with him about it. On March 27, 2015, Moody submitted a grievance to the Bar which notified Mirando. He did not respond.

Moody testified Mirando was to file a writ for him to return to Washington County and negotiate a plea on new charges in Tulsa County. Although satisfied about the outcome of the Tulsa County case, Moody was forced to file the writ himself. He was in a halfway house and was able to work at the time of the PRT hearing, but claimed Mirando's lack of communication had resulted in a three month delay in his becoming eligible for a lower level of security.

### ¶ 10 Count IV: The Mendoza-Darby Grievance

Lorraine Mendoza-Darby hired Mirando to represent her on a DUI charge and paid a fee of $1,700.00. She claimed he failed to inform her of a court appearance which

charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.
© A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing signed by the client and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal; litigation and other expenses to be deducted from the recovery; and whether such expenses are to be deducted before or after the contingent fee is calculated.

The agreement must clearly notify the client of any expenses for which the client will be liable whether or not the client is the prevailing party. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter, and, if there is a recovery, showing the remittance to the client and the method of determination. . . .

**8. Rule 8.4 Misconduct**

It is professional misconduct for a lawyer to:
(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; . . . .

she missed and for which she was later arrested. She also alleged Mirando failed to make a diligent attempt to get her out of jail or to reduce her bond, although it was disputed whether Mirando represented her at the time. The judge refused his request to pull the warrant. After the warrant was executed a few months later, she was assigned a public defender and she pled guilty into DUI court. The complaint also alleges he failed to communicate with her and to earn his attorney fee. She submitted a grievance against him to the Bar which advised him the matter had been opened for formal investigation. He failed to respond.

¶ 11 Count V: The Blake Grievance

In 2013, Glennon Blake hired Mirando to represent him to obtain a reinstatement of his license to practice law in Oklahoma. Blake paid Mirando a fee of $2,500.00. Blake alleged he met with Mirando five or six times, for a total of three hours. Although Mirando represented Blake for more than 18 months, he failed to file any reinstatement documents with the Bar on Blake's behalf. It is alleged that although Blake tried to communicate with Mirando by mail, e-mail and telephone, Mirando would not communicate with him. He never returned Blake's fee or his file. Moreover, when Blake hired another lawyer, he had to obtain new letters of recommendation from character witnesses. Mirando was notified by the Bar that Blake filed a grievance against him, but Mirando never responded to the Bar.

¶ 12 Count VI: The Triplett Grievance

Joshua Triplett, a Minnesota resident, hired Mirando to represent him on a DUI charge and some pending warrants. He paid $2500.00 to Mirando to find out what was pending on a DUI in Talihina and to help him get his license back. He said Mirando made no appearances on his behalf and did no work on a DPS case which is still pending. He had to pay all the fines

and work everything out over the telephone himself instead of having local representation. Mirando stated he investigated the matters and asked Triplett when he was coming back to Oklahoma. He never received a response and never followed up. Triplett disputes that Mirando told him to return to Oklahoma. He alleged Mirando failed to return phone calls or to communicate with him and that he failed to earn his attorney fee. Mirando believes he earned approximately $800 to $1000 of the fee. The Bar notified Mirando the matter had been opened for formal investigation and requested a response, but Mirando did not respond.

¶ 13 Count VII: The Shalaby Grievance

On September 10, 2014, Ranya Shalaby paid Mirando $2,500.00 to represent her in an employment matter. She testified by telephone from Cairo, Egypt, that he was to write a "cease and desist" letter to the American CEO of the American University in Cairo, Shalaby's employer. She testified Mirando did not write the letter she hired him to write. He was to show her a copy of it before sending it, which he failed to do. She heard nothing from him. Shalaby attempted to contact Mirando numerous times, but she was unable to reach him. Mirando presented an undated copy of the letter he prepared for the university official, but Shalaby said she never saw it and did not know of it being sent. She submitted a grievance to the Bar against him, but as of the date the complaint was filed, Mirando had failed to respond.

¶ 14 Count VIII: The Gibson Grievance

Christopher Gibson paid Mirando $500.00 to represent him on a case involving Revocation of Probation which was unsuccessful. Gibson testified by telephone that he paid Mirando an additional $750.00 to file an appeal. He claimed Mirando neither filed the appeal nor communicated with him about the case.[9] Mirando ques-

---

9. Gibson agreed that Mirando had represented him several years and had made 20–23 court appearances on his behalf. The matter at issue was the application to revoke a suspended sentence for child abuse to which he had already pled guilty while represented by another attor-

ney. Mirando defended him on numerous complaints from the probation office, including testing positive for marijuana and missing appointments for employment. He admitted Mirando obtained a psychological evaluation with a doctor and a no-cost inpatient drug treat-

tioned Gibson about whether it was possible he had agreed to look into the feasibility of filing an appeal, but decided there was no point in filing one. Gibson said his grandmother told him Mirando said he would file one, and she paid him $750 to do so. Mirando later testified the $750 was for past attorney fees, and that he later told Gibson's wife that he did not see any basis for filing a direct appeal.

## THE BAR'S SUPPLEMENT TO THE RECORD

¶ 15 On March 7, 2016, the Bar filed its Complainant's Supplement to the Record. It alleged that two additional grievances had been filed against Mirando after the date of Mirando's disciplinary hearing. The Bar advised the Court that Mirando had failed to respond to its notices of the grievances and requested direction from the Court as to how to proceed. On March 22, 2016, an order was filed directing Mr. Mirando to respond to the Court on the latest allegations no later than April 11, 2016.[10] We noted his failure to respond to the Bar and advised him that if no further response was received, the complaint would be deemed amended to include the latest charges raised against him, and the facts contained therein would be deemed admitted. Mirando filed no response to either grievance or to this Court's order.

### ¶ 16 Count IX: The Gilbertson Grievance

Melvin Gilbertson is the attorney for the Ward, Susan Wiemar, in a Trust in which Mirando is the Guardian of the Person and the Estate. In a hearing before the Tulsa County District Court, Gilbertson alleged that $450,000.00 of the Ward's money was deposited into an account controlled by Mirando, and the whereabouts of the funds is unknown. Mirando failed to appear in

Tulsa County, and a bench warrant was issued for him. The trial court advised Gilbertson to file a bar complaint against Mirando. Following the hearing, on March 3, 2016, the trial court filed its Order for Surcharge against Glenn Mirando. The order personally surcharged Mirando for the sum of $492,286.00 and ordered him to pay the legal fees and costs incurred by the Ward in the matter. It also ordered Mirando to reimburse the Ward "for the federal and state taxes that were incurred and paid for by the Ward for the calendar years 2013, 2014 and 2015 that were the result of the unexplained funds in the amount of $492,286.00 being included in the individual income tax returns of the Ward. This amount will be subsequently determined by Melvin L. Gilbertson and an application shall be submitted to the Court for approval." Mirando did not respond to the Bar's notice.

### ¶ 17 Count X: The Lindsey Grievance

The Bar alleges that Chris Lindsey submitted a grievance against Mirando on February 5, 2016. He claimed he hired Mirando in November, 2015, on a criminal charge and paid him $1250.00 to represent him. Mr. Lindsey complained that Mirando would not return his phone calls or text messages and failed to communicate with him. He requested the return of his money and terminated his services. Mirando failed to respond to the Bar's notice of the Lindsey grievance.

## MIRANDO'S PRACTICE

¶ 18 Mirando testified he does not utilize written contracts with his clients. He does not keep a record of the attorney fees which have been paid, except to deposit them in an operating or personal account, and cannot

---

ment for him. Eventually, Gibson confessed to the probation officer and to Mirando of having "a lapse" as to using illegal substances, and the probation officer based her finding of his failing a drug test on his own admission, leading to the court's revocation of his suspended sentence.

10. The March 22, 2016, order provided, in part: Respondent is ordered to respond to this Court, no later than April 11, 2016, setting out any defenses or circumstances regarding the latest grievances filed against him. Respondent may also request a hearing before the PRT on the latest charges on or before the above date. If no response is received from Respondent, the complaint shall be deemed amended to include these two latest grievances; the facts shall be deemed admitted and combined with the prior grievances to consider the appropriate discipline to be imposed by this Court against the Respondent.

show what fees represent work which is already done. He testified he keeps "very little" contemporaneous time records in his practice. He considers his fees to be "flat fees" which cover the entire agreement with a client. He also testified he believes he is a good lawyer and has represented his clients well, particularly his criminal clients. He blamed himself for the problems he now faces, saying he puts things on the "back burner" with good intentions to follow up, but he often fails to do so.

¶ 19 He testified the matters which consume most of his time, or which are on the "front burner," besides his family, are daily court appearances and things needed "right then and there." He may have two or three arraignments, a two-day long preliminary hearing or a week-long trial. There is rarely a day that he is not in court.

¶ 20 Although he shares office space with another lawyer, they have separate corporations, but work a lot together on cases. He has a legal assistant who answers the phone, does some drafting, and sets some appointments. He testified there is no reason his legal assistant couldn't have helped him monitor the progress of his cases or to assist him in returning his clients' phone calls. He said in hindsight, it is something he should have asked him to do.

¶ 21 He also testified he had not shared his disciplinary problems with his wife or his therapist, whom he sees for depression. Even his legal assistant, who knew of the hearing, did not know the extent of the matter. He stated it was an "embarrassment" and in some cases, it was an "affront" to him, because he works hard for his clients and tries to obtain the best results. He admitted there is also a "fear element" which arose after he failed to respond. He said:

And it was neglectful at that time. After that it's been—you know, since then, which has been a couple of months, it's been fear. You know, it's been fear. I'm not justifying. My actions were you know, ridiculous. I just put—made other priorities. I mean, I'd think about it and I'd say, "Okay. I've got a trial". So, I prepared for trial and go on a week-long trial. So, recently there's been a fear element. And I expect—and you're right.

¶ 22 The evidence suggests Mirando responds to inquiries from his clients in much the same way he deals with questions from the Bar about his clients. When clients want information about the status of their cases, he is hesitant to return their phone calls. Similarly, after grievances are filed and he is again asked for the status of his cases, he has systematically ignored requests for information, when in fact, the evidence indicates he has done much of the work he agreed to do. Because of his severe lack of record keeping and his practice of tending only to "front burner" issues, he ultimately ignores both his clients and the Bar. This persistent avoidance of responsibility has led to the necessity of the Court's involvement.

## MOTION TO DEEM ALLEGATIONS ADMITTED

¶ 23 The Bar filed a motion to deem allegations admitted because Mirando failed to respond to the allegations in the complaint. Prior to the presentation of the Bar's evidence, the Bar advised the Presiding Master it intended to present the same evidence, regardless of whether the motion to deem allegations admitted was granted. Pursuant to Rule 6.4, RGDP,[11] even when the allegations are deemed admitted, evidence shall be submitted to determine the appropriate discipline. *OBA v. Knight*, 2015 OK 59, ¶ 19, 359 P.3d 1122, 1128. Rule 6.4 was followed in this case. The Presiding Master allowed the submission of evidence by the Bar and took the motion under advisement before later granting it after much of the Bar's evidence was presented. She found that as a result of Mirando's failure to respond to the complaint, the Bar had no opportunity to investigate, to verify Mirando's defenses or to test

---

11. **RGDP Rule 6.4** provides:
    The respondent shall within twenty (20) days after the mailing of the complaint file an answer with the Chief Justice. The respondent may not challenge the complaint by demurrer or motion. In the event the respondent fails to answer, the charges shall be deemed admitted, except that evidence shall be submitted for the purpose of determining the discipline to be imposed.

them at trial, and that the complaint did not implicate a public policy interest. Thereafter, the trial panel found the only remaining issue was to hear the evidence to determine the appropriate discipline to be imposed. While Mirando did not present evidence of his own, his former clients testified, by phone or in person, and he cross examined each of them. He offered portions of their cross examination testimony as evidence of mitigation. The Bar's direct examination of Mirando provided further evidence of mitigation.

### RULES 1.1, 1.3, 1.4, 1.5, 8.4(a), ORPC

■ ¶ 24 We agree with the PRT that clear and convincing evidence of a lack of competence, in violation of Rule 1.1, ORPC, was not shown. In many instances, Mirando was an effective advocate for his clients. Moreover, counsel for the Bar stated Mirando was a competent lawyer, particularly in the courtroom.

■ ¶ 25 The Bar has presented clear and convincing evidence of Mirando's violation of Rules 1.3, 1.4, and 1.5, ORPC. In each grievance in the complaint and in the supplement to the record, Mirando's lack of diligence has been alleged and proved. It was shown by his failure to contact his clients when repeated attempts to contact him were made. He admitted his attention went to the cases in which he had trials or other court appearances "right then and there." The evidence presented of his consistent lack of contact with his clients, leading to their inability to talk to him about their cases, or their need to hire other counsel, was a clear violation of Rule 1.3, ORPC.

¶ 26 Although the evidence shows he did much of the work he was hired to do for clients Yurchenko, Whitman and Mendoza–Darby, in Counts I, II and IV, Mirando's lack of diligence was shown by missed court dates for which his clients were penalized by the court. He also failed to file an entry of appearance in the Moody grievance, Count III, and failed to communicate with all of them.

¶ 27 In the Blake grievance, Count V, he showed a complete lack of compliance with Rules 1.3 and 1.4. In that case, he was asked by a fellow lawyer for representation in a reinstatement proceeding. He received a fee of $2500.00 but never filed anything on his client's behalf. In addition to a lack of diligence and communication, he also violated Rule 1.5 for collecting an attorney fee for which he performed no work. Mirando was unable to present any evidence of mitigation here.

¶ 28 In the Triplett, Shalaby and Gibson grievances, Counts VI, VII and VIII, the facts are disputed as to whether the work Mirando did was within the agreement he had with his clients. As to Triplett, although Mirando testified he was waiting for Triplett to return to Oklahoma, he admitted he never followed up when he didn't hear from him. He thus violated Rules 1.3 and 1.4. Additionally, of the $2500.00 paid, Mirando said he thinks he earned approximately $800-$1000. This would constitute a Rule 1.5 violation. As to Shalaby and Gibson, the evidence supports Mirando's claims that he did perform some of the work he agreed to perform. However, the facts are disputed whether Mirando followed through on his agreements with these clients and rendered the services the clients expected. Certainly, violations of Rules 1.3 and 1.4 are apparent, leading to concerns that he didn't fully earn his attorney fees, in violation of Rule 1.5.

### RULE 1.15, ORPC, FAILURE TO MAINTAIN TRUST ACCOUNT

■ ¶ 29 The PRT determined the evidence clearly showed Mirando failed to maintain a trust account, a violation of ORPC Rule 1.15. However, the panel found it would violate Mirando's rights to due process to discipline him for it because the Bar's complaint did not include it as an element of his misconduct.[12] The Bar responds that the

---

12. The report states at sub-heading 2 of footnote 3, page 16:

Respondent's failure to maintain a trust account is obviously of great concern to the Panel. However, the Complaint does not allege a violation of Rule 1.15 of the ORPC. More importantly, while rule 6.2 requires only "that the specific facts be set forth, and does not require the lawyer to be notified of the specific disciplinary rule that such conduct violates," in the

complaint contained sufficient facts to put Mirando on notice that a trust account violation had occurred and would be raised. Each grievance contains an allegation that Mirando failed to earn the fees he was paid, and that he failed to return the unearned fees as requested. Citing State ex rel. OBA v. Johnston, 1993 OK 91, ¶ 19, 863 P.2d 1136, 1143, the Bar contends it is required only to plead sufficient facts to put the attorney on notice of the charges and to provide an opportunity to respond.

¶ 30 Specific facts which would constitute violations of Rule 1.15, ORPC (trust accounts) were not alleged in the Complaint, and we agree with the Trial Panel the Bar did not give Mirando adequate notice he would be asked to defend a violation of Rule 1.15. See State ex rel. Oklahoma Bar Ass'n v. Besly, 2006 OK 18, 136 P.3d 590; State ex rel. Oklahoma Bar Ass'n v. O'Neal, 1993 OK 61, 852 P.2d 713.

¶ 31 However, this Court cannot ignore the subsequently filed "Complainant's Supplement to the Record," which has not been contested by Mirando, alleging his failure to account for more than $450,000.00 of his Ward's money in an account under his control. While not specifically a trust account issue, pursuant to Rule 1.15, ORPC,[13] as he was not serving as the Ward's attorney, the allegations seriously suggest misappropriation of the Ward's funds. This failure to account resulted in a district court order for surcharge against him in the amount of $492,286.00. The necessity of an accounting for these funds will be a mandatory requirement for Mirando and will be addressed at the discipline stage of this proceeding.

¶ 32 The lack of a Rule 1.15 allegation in the complaint indicates the Bar was unaware, until Mirando testified, of his failure to maintain a trust account. However, in light of the

allegations raised after the PRT hearing with regard to his Ward's funds and Mr. Mirando's decision to ignore this Court's order to explain or request a hearing, he cannot complain he was not afforded his fundamental right to due process. Our ultimate disposition will take into consideration the necessity for maintaining such an account and giving it the attention mandated by our rules.

### RULE 8.4(a), ORPC

¶ 33 In the trial panel report, the PRT also found the Bar failed to prove a violation of Rule 8.4(a), ORPC, holding the Bar presented no evidence of Mirando's "misrepresentations" or an underlying motive to make a misrepresentation.[14] As to 8.4(a), however, the misconduct contemplated by the rule is the violation, or the attempt to violate, the Rules of Professional Conduct, which we hold has been shown by clear and convincing evidence.

### RULE 5.2, RGDP

¶ 34 We also find that the Bar has presented clear and convincing evidence of Mirando's violation of Rule 5.2, RGDP. It appears to the Court that Mirando's failure to respond to the Bar in these matters is an extension of the way he practices law. The leading complaint raised by his clients is the fact he will not communicate with them. In each of the grievances, the Bar has documented numerous attempts to contact him for a response. He admitted that in the past when he had promptly responded, the matter was often resolved without the necessity of a formal investigation. He admitted some, if not most, of the current grievances could have been resolved in this way. However, after he put many matters on the "back burner" with the intention of addressing the

Panel's opinion, the Complaint does not allege any facts putting Respondent on notice he may be disciplined for a violation of Rule 1.15. See State ex rel. OBA v. Eakin, 1995 OK 106, ¶ 15, 914 P.2d 644, 649 ("The fundamentals of due process are applicable in lawyer disciplinary proceedings. The Bar must allege facts sufficient to put the accused lawyer on notice of the charges and afford the respondent ample opportunity to defend against the allegations").…

13. As alleged in the Complaint, the Court found Mirando violated Rule 1.15 ORPC when he was given a private reprimand in 2011.

14. Apparently, the PRT refers to rule 8.4c, rather than 8.4(a), which was raised by the Bar. Rule 8.4c was not raised by the Bar against Mirando, and we see no evidence of misrepresentations.

problems later, he waited until the PRT hearing to defend himself. As the Bar's witness, investigator Sharon Orth, stated, his reasons for not responding were the same today as in the earlier investigations. She stated:

> And I would say his answers were similar to what he gave today. Just putting it off, intending to do it and never doing it, then being afraid to do it because he put it off so long. Pretty much the same as what he said today.

## DISCIPLINE

■ ¶ 35 Mirando's continued lack of attention to his clients and to the Bar require this Court to impose discipline. The prior discipline of a private reprimand in 2011 for much of the same type of misconduct was apparently insufficient to effect a permanent change in his conduct. Although Mirando explained some of the mitigating circumstances involved in the charges raised by his clients, his repeated lack of attention to their well-being was evident. Moreover, if he had promptly responded to the Bar, he may have been able to solve many of the problems raised in the complaint. In addition to a suspension from the practice, we find supervision of his law office practices to be necessary. See gen., *State ex rel. OBA v. Prather*, 1996 OK 87, 925 P.2d 28.

¶ 36 A troubling issue to the Court is that the prior discipline was imposed for misconduct which is similar to the misconduct now alleged. Similar habits and patterns appear to have resurfaced and have now led to further grievances, as reflected in the current complaint and the two subsequently filed grievances. The Court finds the record is sufficient for our *de novo* review of the allegations against Mirando. We find clear and convincing evidence has been presented to prove Mirando violated ORPC Rules 1.3, 1.4, 1.5, and 8.4(a), and RGDP Rule 5.2. However, the Bar did not present clear and convincing evidence that Mirando lacked competence as a lawyer, in violation of Rule 1.1, ORPC.

¶ 37 This Court has assessed discipline for lack of attention to clients' interests in varying forms of discipline. In *State ex rel. OBA v. Benefield*, 2005 OK 75, 125 P.3d 1191, the Court ordered a one-year suspension from the practice of law for a pattern of attorney neglect and the failure to represent clients with diligence and competence. Although we hold lack of competence was not shown herein, we do find a pattern of attorney neglect which warrants substantial sanctions when previous discipline has failed to correct the misconduct. *Benefield*, 2005 OK 75, ¶ 31, 125 P.3d at 1196.

¶ 38 Mirando's continued pattern of client neglect and failure to respond to requests for information indicates a lack of accountability as a lawyer to the Bar and to this Court. Although he did attend the PRT hearing, he appeared without witnesses or other evidence to offer on his behalf. This showed a further indifference to these proceedings and to protection of his license to practice law. We are guided by previous cases involving similar offenses and find that Mirando should be suspended for two years and a day. In particular, we quote approvingly from a similar case, *State ex rel. OBA v. Whitebook*, 2010 OK 72, ¶ 26, 242 P.3d 517, 523:

> When a lawyer places so little value on his license to practice law and shows no desire to protect his license, he should be forced to appear before this Court pursuant to rule 11 of the RGDP to show why he should again be allowed to practice law. Thus, we find the appropriate discipline is suspension from the practice of law for two years and a day . . . .

See also *State ex rel. OBA v. Bellamy*, 2012 OK 20, 273 P.3d 56; and *State ex rel. OBA v. Beasley*, 2006 OK 49, 142 P.3d 410, and *State ex rel. OBA v. Phillips*, 1990 OK 4, 786 P.2d 1242, both cited in *Whitebook*, supra.

## CONCLUSION

¶ 39 The Bar has filed an application to assess costs in this proceeding against Mirando, pursuant to rules 6.13 and 6.16, RGDP. The total requested is $2,825.99. The costs consist of certified mail postage expense, process server expense, witness fees and mileage for witnesses and a PRT panel member, and the expense of preparing the transcript of the December 10, 2015, hearing. We find

these expenses to be reasonable, and the Bar's application is granted.

40 This Court orders as follows:

a) Glenn Mirando is suspended from the practice of law for two years and a day from the date this opinion becomes final;

b) he is ordered to pay the costs of this proceeding in the amount of $2,825.99 within ninety (90) days after this opinion becomes final;

c) at the end of his suspension, Mr. Mirando is ordered to meet with an OBA lawyer, arranged through the General Counsel's Office of the Bar, for assistance in case management and docketing, with progress reports to the Court each month for six months. Additionally, within thirty (30) days of the date this opinion becomes final, Mr. Mirando is ordered to account to this Court for the funds of his Ward, Susan Wiemar, in the amount of $492,286.00, which is noted in the Order for Surcharge filed against him in the district court;

d) pursuant to Rule 9.1, RGDP, Mirando is directed to notify his clients who have legal business pending within twenty (20) days, by certified mail, of his inability to represent them and the necessity for retaining new counsel. He is also directed to file a formal withdrawal as counsel in all cases pending in any tribunal and to file an affidavit of compliance with the Commission and the Clerk of the Supreme Court within twenty (20) days; and to otherwise follow the requirements of Rule 9.1, RGDP; and

e) Mirando is directed to reimburse the Client's Security Fund of the Oklahoma Bar Association, pursuant to Rule 11.1(b), RGDP, if any funds have been expended on his behalf, showing the amount paid has been repaid to the Bar, as a condition to reinstatement.

¶41 RESPONDENT SUSPENDED FOR TWO YEARS AND A DAY; COSTS IMPOSED; SUPERVISION, ACCOUNTING, AND COMPLIANCE WITH RULES 9.1, 11.1(b) RGDP, ORDERED.

REIF, C.J., KAUGER, WATT, WINCHESTER, EDMONDSON, TAYLOR, COLBERT, GURICH, JJ.—CONCUR

COMBS, V.C.J.—DISSENTING: "I would disbar this respondent from the practice of law."